UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK MAHONEY, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>-vs- )<br>) Civil Action No. _____<br>THE UNITED STATES MARSHALS )<br>SERVICE, *et al.*, )<br>)<br>Defendants. ) | |

**PLAINTIFFS' EXHIBITS SUPPORTING**
**THE MOTION FOR A PRELIMINARY INJUNCTION**

Declaration of Reverend Patrick J. Mahoney ............................... Exhibit 1

Declaration of Troy Newman ............................................ Exhibit 2

Declaration of Brenna Sullenger ......................................... Exhibit 3

Declaration of Father Daniel Sparks ...................................... Exhibit 4

# EXHIBIT 1

DECLARATION OF REVEREND PATRICK J. MAHONEY

I, Patrick Mahoney, hereby declare under the penalties of perjury of the Commonwealth of Virginia:

1. I am a citizen of the United States and a resident of the Commonwealth of Virginia.

2. I am a Christian, and an ordained Presbyterian minister.

3. The Christian Defense Coalition ("CDC") is an unincorporated association of Christians involved in public activism.

4. I founded the CDC.

5. As a Christian, I am compelled to adhere to the tenets of my religious faith.

6. The Holy Bible is, in my religious faith, the express Word of God, infallible, and it is binding upon my conscience and manner of life.

7. The rule of the Holy Bible includes the biblical injunction or command against removing ancient landmarks found in chapter nineteen of the Book of Deuteronomy.

8. As I understand that biblical injunction, the rule against removing ancient landmarks is violated by the government of the United States when judicial orders to remove the display of the Ten Commandments from public places are given effect.

9. My religious faith demands of me that I pursue the cause of corporate obedience to God's commands and to justice.

10. At the time of my activities across the street from St. Matthew's Cathedral in 2003, there was pending at the Supreme Court a petition seeking review of a case involving the display of the Ten Commandments in the courthouse of the Alabama Supreme Court.

11. My religious faith demands of me that I pursue obedience to the biblical command not to remove the ancient landmarks, including the Ten Commandments, and that I conduct prayer vigils and demonstrations to call our Nation's leaders and conscience to obedience to this command.

Declaration of Reverend Patrick Mahoney
Mahoney, et al., v. United States Marshals Service, et al.,
Civil Action No. _____ (D.D.C. 2005)
Page 1 of 6

05 1786

FILED

SEP - 9 2005

NANCY MAYER WHITTINGTON, CLERK



12. For October 2003 and October 2004, I planned a demonstration and prayer event to take place on the sidewalk in front St. Matthew's Cathedral in Washington, DC.

13. The demonstration and prayer vigil activities suppressed and/or threatened to be suppressed by the Marshals Service conduct described in this Declaration will occur or did occur on a public sidewalk adjacent to a public street in Washington, the District of Columbia.

14. That public sidewalk is continuous through the neighborhood and in the City of Washington.

15. That public sidewalk is regularly used by the public for passage through the neighborhood and in the City of Washington.

16. That public sidewalk is indistinguishable from other public sidewalks in the City of Washington, including, for example, the public sidewalk adjacent to the United States Supreme Court and the public sidewalk adjacent to the parade route used for presidential inaugurals along Pennsylvania Avenue.

17. St. Matthew's Cathedral is located across a public street, Rhode Island Avenue, NW, from the sidewalk at issue.

18. I scheduled these events to coincide with the annual Red Mass, an event always scheduled to take place on the Sunday preceding the opening of the new Term of Court for the Supreme Court, in October.

October 2003 Red Mass Events

19. When I arrived at the Cathedral, I found that vehicular traffic in front of the Cathedral was obstructed by crossbucks, and that portions of the sidewalks across from the Cathedral were marked by yellow tape.

20. I spoke with a uniformed USMS officer, whose name and identifying information is unknown to me, Deputy Marshal John Doe 1.

21. Deputy Marshal John Doe 1 told me I could stand on the public sidewalk directly across from the Cathedral, but that I could not display any signs while I did so.

22. In the area indicated by Deputy Marshal John Doe 1, I discovered a cadre of press

representatives, some with video cameras, others with tape recorders and microphones.

23.   I stood for a brief time in the indicated area without holding any sign.

24.   While I stood without holding a sign, I was left unmolested by the Defendants and other police officials.

25.   I next picked up a sign, approximately 2 feet tall and 3 feet across, on which was displayed the text of the Ten Commandments.

26.   I stood in the area where representatives of the press were standing on the public sidewalk, near where I had just stood without a sign.

27.   In a few brief minutes, I was confronted by Deputy Marshal John Doe 2.

28.   Deputy Marshal John Doe 2 ordered me to put down my sign.

29.   Without obstructing anyone's passage, or making offensive physical contact with another, I continued displaying my sign.

30.   Deputy Marshal John Doe 2 physically seized me, and with the assistance of Deputy Marshal John Doe 3, he dragged me out of the area of the public sidewalk where the Defendants were interfering with the display of signs.

31.   Deputy Marshal John Doe 2 threw my sign on the ground outside the area from which he had just ejected me.

32.   I concluded that this ejection was not an arrest, and that I was free to move about.

33.   I then picked up my sign, and returned to the site of the offensive seizing of his person by Deputy Marshal John Does 2 and 3.

34.   I was immediately seized, and on this occasion, Deputy Marshal John Doe 2 and John Doe 3 placed me under arrest.

35.   The deputies used plastic zip strip style handcuffs to secure my arms behind my back.

36.   The Defendants then transferred me into the custody of representatives of the

Washington Metropolitan Police Department, who took me to the local District station.

37.    At the District station, I was cited, identifying information was taken from me, and I was released.

### Looking Forward: Preparing for the October 2004 Red Mass

38.    The Archdiocesan practice of hosting a Red Mass at the beginning of the new Term of the Supreme Court of the United States is well-established.

39.    Consequently, because of prior arrests at the hands of the Defendants, I requested my counsel to contact legal counsel for the USMS.

40.    I so instructed my attorney for two purposes: obtaining redress of my prior injury and determining whether the USMS planned to engage in the same conduct during the Red Mass on October 3, 2004.

41.    I had intended to avoid a repeat of the circumstances in which I was wrongfully arrested in 2003 by obtaining an agreed resolution, and also intended to learn whether judicial intervention would be required to avert such circumstances.

42.    As a result of those negotiations, my counsel obtained an oral representation that the USMS would not be responsible for security detail activities outside of St. Matthew's Cathedral and that decisions about security and demonstrations would be made by the Metropolitan Police Department.

43.    As a consequence of obtaining that representation from the Office of General Counsel for the USMS, I did not seek judicial intervention in advance of the 2004 Red Mass.

44.    Despite the representations made to my counsel, when I arrived at St. Matthew's Cathedral on the morning of October 3, 2004, I discovered that the USMS was in charge of security for the exterior of St. Matthew's Cathedral.

45.    When USMS agents and/or employees discovered that I was seeking to pray and to display a placard containing the text of the Decalogue, they threatened to arrest me for demonstrating in an area of the public sidewalk that they claimed was closed to demonstrations.

46. The USMS agents and/or employees persisted in the threats and harassment of me and those with me, making it difficult to carry out our planned prayer vigil and demonstration.

47. While no arrests were made during this event, the event was substantially affected by the conduct of the USMS agents and/or employees, and my ability to exercise my religious obligations and to express my political and religious views was substantially burdened and hampered.

48. That very area of the sidewalk was not, in fact, "closed" to the public.

### Prayer Vigil and Demonstration Planned for October 2, 2005, Red Mass

49. I plan to conduct a further demonstration in furtherance of my religious duties during the time when the Red Mass is occurring at the disputed site on Sunday, October 2, 2005, the first Sunday in October, 2005.

50. Based on the conduct of the Defendants, I am afraid that when I again engage in the conduct described above I will be subjected to further unlawful arrests and detentions.

51. The basis for my fear is that the United States Marshals Service has shown by its conduct at the last two Red Masses that it will harass and disrupt demonstrations and prayer vigil activities, either by direct arrest, or by threats of arrest and constant harassment.

52. Because the conduct of the Marshals Service at the last two Red Masses, my ability to communicate to my intended audience, those attendees of the Red Mass who were entering and departing from St. Matthew's was entirely lost or so substantially disrupted as to be made completely ineffective.

53. When the Marshals Service engages in this conduct again, as its prior repeated efforts strongly suggest it will, it will be too late to seek the aid of a court order, if the assistance I am requesting in this case is denied to me.

### No Just Cause for Arresting or Harassing Me

54. During the 2003 and 2004 events, I did not injure public health or safety, nor did I threaten injury to public health or safety.

55. By federal statute, knowing and willful obstruction, resistance or interference with a Federal law enforcement agent engaged in the performance of the protective functions authorized by relevant federal statutes is subject to the risk of fine and imprisonment upon conviction.

56. In October, 2003, when I was arrested and prevented from carrying out my planned activities, and in October, 2004, when I was harassed and disrupted constantly by Marshals, the Defendants had not generally closed the sidewalk to use by the public.

57. I observed numerous instances in which persons passed through the vicinity using the very sidewalk to which I and my associates had been denied access for the purpose of displaying signs depicting the text of the Ten Commandments.

58. During the time that I conducted my activities, and after I was arrested, pedestrians continued to pass up and down the street at the very location where the arrests took place.

59. During the time that I conducted my activities in 2003, and after I was arrested too, members of the press continued to stand in the very locations where the arrests took place.

60. I am very afraid that without the aid of this Court, the USMS will continue to abridge my federal constitutional and statutory rights without legal justification.

FURTHER YOUR DECLARANT sayeth not.

I, Reverend Patrick Mahoney, in accord with Title 17 U.S.C. § 1726, hereby declare under the penalty of perjury of the Commonwealth of Virginia that the foregoing statement, and the factual assertions contained therein, are true and correct.

This 30th day of August, 2005

*[Signature]*
Reverend Patrick Mahoney