# EXHIBIT 2

DECLARATION OF TROY NEWMAN

1. I am a citizen of the United States, and I currently reside in Kansas.

2. I make this Declaration upon personal knowledge of the facts stated herein.

3. On October 5, 2003, I took the photographs attached hereto while I was in the vicinity of St. Matthew's Cathedral in Washington, DC.

4. From being present at the time that I took these photographs, I can state that the photographs attached hereto fairly and accurately depict the images and scenes that they purport to depict.

5. On the weekend before the Supreme Court opened its new 2003 Term, I traveled to Washington, DC, to participate in prayer vigils, demonstrations and rallies supporting the public display of the Ten Commandments.

6. Among the events planned for that weekend in which I had intended to participate there was a sidewalk demonstration adjacent to St. Matthew's Cathedral in the District of Columbia.

7. That demonstration was planned to coincide with the annual Red Mass at the Cathedral.

8. On Sunday October 5, 2003, I went to the neighborhood of the Cathedral to participate in the demonstration.

9. I brought my camera with me.

10. While en route to the Cathedral, I received a call from Brenna Sullenger, my assistant, telling me that Pat Mahoney needed some help talking with the police at the Catholic Church we were planning on attending that morning.

11. She was already on the sidewalk and seeming to have some difficulty.

12. I promised to get there as soon as I could.

13. I drove past the road the church was on (left of the church) and circled around to the opposite side of the block.

05 1786

Declaration of Troy Newman
Mahoney, et al., v. United States Marshals Service, et al.,
Civil Action No. ____________ (D.D.C. 2005)
Page 1 of 5

FILED
SEP - 9 2005
NANCY MAYER WHITTINGTON, CLERK

14. There was no available parking so I got out and handed over the vehicle to Jeff Waalkes and began to walk toward the church on the sidewalk on the same side of the street as the church.

15. I approached the church from the east.

16. I noticed some commotion, not too unusual, just the sort you might see where there are a lot of people or where VIPs are in public.

17. I didn't cross a police tape nor was my forward motion impeded in any way.

18. Many people (dozens) where streaming toward the church.

19. The street in front of the church was blocked off to vehicular traffic but people were milling in the street.

20. As I reached the church, I looked across the street looking for my associates.

21. At once, I noticed Pat Mahoney in handcuffs, standing next to a heavily armed police officer, or US Marshal.

22. At once, I reached for my camera and turned it on.

23. I took a picture.

24. I looked both ways and stepped into the street.

25. As stated, the street was closed to vehicular traffic and there were other people in the road.

26. As I drew near to the heavily armed officers and Mahoney (about 30 feet), I was careful not to interfere with the police.

27. I felt I was just as close as other citizens and a group of journalists to the incident.

28. Pat called out to me and said "Take a picture of that woman over there with the red purse."

29. So I turned 180 degrees and took that picture.

30. He said to take some more pictures because he was going to file a protest with the police for some sort of false arrest.

31. As I continued to take pictures, I noticed there were several officers with machine guns and helmets controlling Mahoney and four other people.

32. There were reporters, camera-men and just bystanders everywhere.

33. I didn't know why Mahoney was being arrested and I certainly wasn't interested in winding up in his situation.

34. I didn't feel I was in any immediate danger of being arrested; I was just documenting the scene by taking pictures.

35. Up until this point I hadn't made contact with anyone.

36. All I had in my hands were the camera and a Bible.

37. The only person who had said anything to me was Mahoney.

38. As I was taking pictures, I noticed a man in a nice suit coming toward me.

39. I didn't think anything about it until he grabbed my right arm.

40. I said "Hey", as he said, "Unless you are with the Providence media you need to get out of here."

41. He was tall, white and about 40.

42. I said, "I am not with the Providence media, but I am acting on behalf of the press by documenting the situation and I have the same right as the media to take pictures. The first amendment applies to me too."

43. He still held my arm, now tightly.

44. He asked "Who are you with?"

45. I said, while pointing with my camera toward Pat, "I know Rev. Mahoney."

46. At that point he forcefully pulled me closer to the Rev. Mahoney and the other

persons who were arrested and instructed the uniformed officers that I was under arrest too.

47.  I think he said "Officer, take him too."

48.  I protested by saying "Hey, what have I done? All I did was taking pictures."

49.  But at that point the officers where taking my camera and emptying my pockets.

50.  All I had left was my wallet, money and my Bible.

51.  The officers were nice enough to allow me to select someone from the crowd to take my personal items.

52.  I instructed Ken Reed to take some more pictures of what was going on.

53.  We sat on the curb for 15 to twenty minutes handcuffed, and then were put in the back of a Metropolitan Police car for a few minutes.

54.  After those few minutes, the officers transferred us to a larger truck.

55.  There were three men in our side of the truck and we slammed into each other as we were being transferred to the police station.

56.  I had the mental impression that the operator of the police vehicle was driving quite carelessly.

57.  In jail, we were told by an officer (about 5'10", black, in his 30s), that we could "post and forfeit" for $300.

58.  Later, he said told us we could do so for $100.

59.  Finally he said we could get out for $25.

60.  We were incarcerated for several hours.

61.  During that time we were not offered anything to drink.

62.  After several hours with nothing to drink, we all got out.

63. In my case, I understood that I was agreeing to post $25 in cash and to forfeit that money, but I did not sign any document or receipt, and was not given one.

FURTHER YOUR DECLARANT sayeth not.

I, Troy Newman, in accord with Title 17 U.S.C. § 1726, hereby declare under the penalty of perjury of the State of Kansas that the foregoing statement, and the factual assertions contained therein, are true and correct.

This 26 day of August, 2005

Troy Newman

ONE
WAY

ONE
WAY

ONE
WAY

POLICE

Ten Commandments
RadioShack

POLICE

OLICE
LLW 136

ENTER
CAKES & CO
Ten Commandments
POLICE
ILW 136