UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK MAHONEY, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>U.S. MARSHALS SERVICE, et. al., )<br>)<br>Defendants. )<br>) | Civil Action No. 05-1786<br>(RCL) |

## DECLARATION OF CHARLES F. ROBERTS

I, Charles F. Roberts, do hereby state that:

1.   I am a supervisor in the D.C. Superior Court office of the U.S. Marshals Service. I have been employed by the Marshals Service since 1985, and have been a supervisor since September 2002. I am writing this statement in response to the allegation Reverend Mahoney makes in this lawsuit that he was denied his First Amendment rights at the 2004 Red Mass, which was held at St. Matthew's Cathedral.

2.   The Red Mass is an annual event that is held in October at the start of the Supreme Court term. Numerous dignitaries have attended this service in the past, including the President of the United States, the Chief Justice of the Supreme Court, Cabinet members, and other federal, state, and foreign dignitaries. The Marshals Service is charged with providing security for this event, with the Metropolitan Police Department ("MPD") providing logistical support. In 2004, I was the Supervisor in Charge of the Marshals Service security operation for the Red Mass.



3. To ensure the security of the event, the Marshals Service put in place a controlled-access area very similar to the one Robert Brandt has described in his declaration of September 20, 2005. The purpose of the controlled-access area was to ensure that non-attending members of the public did not loiter in the immediate vicinity of the Cathedral, thereby creating a potential threat to attendees.

4. At some point prior to the procession which signals the start of the Mass, I was apprised that Reverend Mahoney and his wife had begun demonstrating inside the controlled-access area. I saw that they were standing on the sidewalk directly across Rhode Island Avenue from the center door of the Cathedral—an area immediately adjacent to the press, which we deemed particularly sensitive because of its close proximity to the area reserved for arriving and departing dignitaries.

5. Along with two other plain-clothes Deputy Marshals, I approached Reverend Mahoney and engaged him in conversation. I advised him that he was standing in a sensitive area and asked that he re-locate to an area further away. Reverend Mahoney adamantly refused, stating that he had a right to stand exactly where he was. At this point, I instructed one of my deputies to continue to speak with Reverend Mahoney as I conferred with an MPD sergeant who was also on the scene.

6. The sergeant and I agreed that the security of the area must be maintained and, as my employees were engaged elsewhere at the various checkpoints, the sergeant agreed to dispatch some MPD officers to bolster the security in the area in which Reverend Mahoney was standing. The sergeant deployed approximately ten motorcycle officers, who parked their motorcycles on the street in front of Reverend Mahoney. Our intention was to create a physical

barrier between Reverend Mahoney and the arriving dignitaries. (The motorcycle officers got off their motorcycles and moved to the sidewalk area behind the press). In addition, the sergeant posted two uniformed MPD officers close to Reverend Mahoney to ensure that he did not attempt to harm the arriving dignitaries or interfere with the procession.

7.  At no time did I or any other officers, including MPD officers, harass Reverend Mahoney or in any way prevent him from displaying signs or otherwise demonstrating. He was never placed under arrest or, in fact, physically touched in any way. At some point after the Mass had begun, I was informed that Reverend Mahoney had left the controlled-access area of his own accord.

8.  Reverend Mahoney's presence immediately adjacent to the dignitary drop-off/pick-up area posed a burden on the security detail present at this event. To maintain proper security at Reverend Mahoney's location required an unanticipated reshuffling of manpower, putting a strain on the entire operation. Given the unpredictable environment we face in the post 9-11 world, this caused me great concern.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 9/20/05            _____
                          CHARLES F. ROBERTS