UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK MAHONEY, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| -vs- | ) Civil Action No. 05-1786-RCL ) |
| U. S. MARSHALS SERVICE, *et al.*, | ) ) |
| Defendants. | ) |

### PLAINTIFFS' SUPPLEMENTAL EXHIBITS

Declaration of Kathleen Mahoney . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit E

Supplemental Declaration of Reverend Patrick Mahoney    . . . . . . . . . . . . . Exhibit F

Dated:  September 27, 2005.

**EXHIBIT E**

DECLARATION OF KATHLEEN MAHONEY

I, Kathleen Mahoney, declare under penalty of perjury:

1. I am a citizen of the United States, a resident of the Commonwealth of Virginia, and I make this declaration based on personal knowledge of the facts stated herein.

2. I was present with my husband, on October 3, 2004, on the public sidewalk adjacent to Rhode Island Avenue across the street from the Cathedral of St. Matthew, in the District of Columbia.

3. My presence on that Sunday was in keeping with a long-standing family practice; my husband and I, and at times our children, have been present for the Red Mass seven or eight times in the last thirteen years.

4. I joined with my husband to be a visible presence and witness, to pray, and to express our views regarding the public display of the Ten Commandments.

5. We sought to do these things in a public place, not inside the Cathedral, and to do them at that time because the Supreme Court then had pending before it cases on the constitutionality of such displays.

6. From past experience we knew that justices of the Supreme Court attended the Red Mass at the Cathedral.

7. Displaying the Ten Commandments on the sidewalk that day was intended to show that such displays in public places are appropriate and certainly are not less appropriate where the display is outside a place of worship.

8. Displaying the Ten Commandments on the sidewalk that day was also intended to remind all who witnessed our display that the Ten Commandments are foundational principles upon which American law is based.

9. We arrived at the location well in advance of the start of the 10:00 a.m. Red Mass.

10. I reviewed that Declaration of Charles Roberts, which purports to describe the events of that morning.

11. Deputy Marshal Roberts claims that neither he nor others harassed my husband, but in

|     |     |
| --- | --- |
|     | fact, for a period of thirty or more minutes, they continuously spoke with and to him about our vigil and display of the Ten Commandments. |
| 12. | While it is true that the Marshals did not take my husband's sign from us, they did everything they could to intimidate him about the display of the sign and our presence on the sidewalk. |
| 13. | Moreover, one or more of the security detail repeatedly threatened to arrest my husband if he did not leave that location. |
| 14. | My husband was sufficiently concerned that these threats of arrest were real and that arrest was imminent that he asked me to move down the sidewalk away from him so that we would not both be arrested. |
| 15. | There was no indication of an for the media on the Rhode Island sidewalk opposite from the Cathedral for media; in fact, there were no more than one or two media cameras present that morning. |
| 16. | Also from the time we arrived, I noticed that there was a continuous flow of people on the sidewalk, using that sidewalk for passage up and down Rhode Island Avenue. |
| 17. | I was shocked when I read paragraph six of Deputy Marshal Roberts' Declaration, "the sergeant posted two uniformed MPD officers close to Reverend Mahoney to ensure that he did not attempt to harm the arriving dignitaries. . . ." |
| 18. | My shock resulted from my awareness of my husband's lifelong commitment to pacifism, and from my knowledge that government officials know my husband, including federal government officials and Washington MPD officials, have continuously worked with him for sixteen years, and have no basis in facts or past behavior to fear that he would attempt to harm anyone. |
| 19. | I have reviewed the Declaration of Deputy Marshal Brandt, explaining the plans for security for this year's Red Mass. |
| 20. | I am appalled that Deputy Marshal Brandt thinks that my First Amendment interests will be secured by allowing the media to stand along Rhode Island Avenue, if they are approved by a church official. |
| 21. | My First Amendment interests are to pray, to display the Ten Commandments, and to |

speak our message that such displays are important and appropriate, and that the Ten Commandments are foundational to American law.

22. My First Amendment interests also include doing these things in a place and time when my intended audience – justices of the Supreme Court – can reasonably be expected to be in a position to see and hear me.

23. Relegating me and my husband to a "pen" far back from Rhode Island Avenue, in a location screened from view by my intended audience by a large commercial building and the "media pen" hardly "promotes" my First Amendment interests.

24. The media does not represent me.

25. The media's exercise of constitutional rights is not my exercise of constitutional rights.

26. The media's exercise of constitutional rights will not promote my First Amendment rights.

27. The media will not be present for the same purposes as us; we are seeking to pray and to communicate; the media will report the events of the day and will do so from their own particular, edited viewpoints.

28. I find it absurd that Deputy Marshal Brandt states that we will not be permitted to endanger Red Mass attendees, which seems to suggest that we intend to pose a threat or to violate the law.

29. I am seeking to exercise constitutional rights of speech, free exercise of religion and peaceable assembly, not to violate the law.

30. I have never endangered anyone, in twenty five years of public protest activity, and have no intention of doing so at this Red Mass.

31. Moreover, Deputy Marshal Brandt preposterously asserts that his demonstration zone will maximize my ability to communicate my message; that planned zone, far from Rhode

Island Avenue, screened from the view of approaching dignitaries by a commercial building, and occluded by the media pen, could not be more poorly constructed to serve the purpose of maximizing my ability to communicate.

Further your Declarant sayeth not.

I, Kathleen Mahoney, hereby declare that the foregoing Declaration is true and correct under the penalty of perjury. Done this 26th day of September, 2005, in Washington, the District of Columbia.

_____
Kathleen Mahoney

**EXHIBIT F**

<u>SUPPLEMENTAL DECLARATION OF REVEREND PATRICK MAHONEY</u>

       I, Reverend Patrick Mahoney, declare under penalty of perjury:

1. I am a citizen of the United States, a resident of the Commonwealth of Virginia, and I make this declaration based on personal knowledge of the facts stated herein.

2. I have reviewed the Declaration of James Brooks.

3. Despite Brooks' statements to the contrary, there were absolutely no access restrictions or controls in place on October 5, 2003, when I arrived on the scene and when I first stood, adjacent to members of the media, on the sidewalk across from St. Matthew's Cathedral.

4. There were no police lines at that time, or police tape marking off controlled areas.

5. Moreover, there were people moving up and down the sidewalk, and standing around near that location, some had cups of coffee, some were chatting with the media representatives, others were onlookers.

6. I have reviewed the Declaration of Charles Roberts concerning the 2004 Red Mass and our event that day.

7. In his declaration, Roberts mentions a controlled access area, but there were absolutely no demarcations, police tape, saw bucks or other indications on the sidewalk on the south side of Rhode Island Avenue that morning; in addition, as the previous year, this time there were, again, people walking up and down along the sidewalk, standing about, a few that asked question of my wife and me, and otherwise making customary use of the sidewalk.

8. Nor is Roberts accurately portraying the facts of that morning related to the Marshals Service's interaction with, and interference with, me.

9. During the time that I was present on that morning and displaying the sign with the Ten Commandments on it, about 45 minutes to an hour, virtually constantly I was either being engaged by various Marshals in confrontations about my right to be present, or being told that arrest was imminent.

10. In fact, arrest seemed so likely to occur immediately that I asked my wife to step down the sidewalk some distance in order to avoid her being arrested with me.

<u>Mahoney, et al., v. U.S. Marshals Service</u>, No. 05-1786-RCL
Plaintiffs' Exhibit F
Supplemental Declaration of Reverend Patrick Mahoney
Page 1

11. Roberts' assertion that my conduct caused an unanticipated need to reshuffle manpower and strained the entire operation is not credible because, well in advance of that day, I had spoken with Metropolitan Police Officials to advise them of our planned activity for that day.

12. In that conversation with MPD officials, I told them where we would stand, what time we would be present, how many of us would be there, and what we would have in the way of signs.

13. That advance notice is my regular custom and practice, dating to my very first event in Washington, DC, in November 1989.

14. I am appalled by Deputy Marshal Roberts' assertion that he had to ensure that I did not attempt to harm arriving dignitaries or interfere with the procession.

15. That assertion is appalling for at least two reasons:

    a. First, as a practicing Christian, I am committed to peaceful and nonviolent expression in the public square and my twenty eight year public record across the Nation of participating in, organizing, and leading such vigils and demonstrations proves that I have kept my commitment.

    b. Second, I have never blocked a public procession.

    c. Third, as I said previously, I took affirmative steps to inform Washington MPD officials well in advance of my plans, and the Washington MPD knows my sixteen year track record of keeping my commitments with respect to events in the District.

    d. Fourth, these facts are specially significant where, as here, I have led numerous demonstrations in previous years of the Red Mass and have never had any instance of violent conduct or interference with processions.

16. I have reviewed the Declaration of Deputy Marshal Brandt.

17. Based on my personal knowledge of the location, I will not be able to communicate effectively to arriving dignitaries, including justices of the Supreme Court and other federal, state and local government officials, from the "pen" set aside for demonstrators.

<u>Mahoney, et al., v. U.S. Marshals Service</u>, No. 05-1786-RCL
Plaintiffs' Exhibit F
Supplemental Declaration of Reverend Patrick Mahoney
Page 2

18. That "pen" is too remote from the arriving dignitaries.

19. That "pen" is screened from view by a commercial building.

20. That "pen" will be screened from view by the media and their equipment.

21. In sixteen years of frequent prayer vigils and demonstrations, including outside the Red Mass, I have never had my right of access to a public sidewalk limited depending on whether I was approved by a church official or possessed press credentials.

22. Deputy Marshal Brandt's assertion that placing me in a demonstration "pen" maximizes my ability to communicate my message is not credible for all the reasons listed above.

23. The Marshals Service's actions in this case are perplexing because I have a spotless record of peaceful and nonviolent vigils and demonstrations at the Red Mass.

24. Because of the prior arrests at the Red Mass in 2003, and the constant harassment and threats of arrest at the Red Mass in 2004, and because of the uncertainty that these government actions create, only my wife and I plan to be present to pray and to display our sign.

Further your Declarant sayeth not.

I, Reverend Patrick Mahoney, hereby declare that the foregoing Declaration is true and correct under the penalty of perjury. Done this 26th day of September, 2005, in Washington, the District of Columbia.

_____
Reverend Patrick Mahoney