UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**REVEREND PATRICK MAHONEY, et al.**   )
                                         )
    Plaintiffs,                       )
                                         )
    v.                                )
                                         )
**U.S. MARSHALS SERVICE, et al.**       )
                                         )
    Defendants.                       )

DECLARATION OF JULIA A. PIERSON,
DEPUTY ASSISTANT DIRECTOR,
OFFICE OF PROTECTIVE OPERATIONS,
<u>UNITED STATES SECRET SERVICE</u>

JULIA A. PIERSON declares and states as follows:

1. I am the Deputy Assistant Director, Office of Protective Operations, of the United States Secret Service ("Secret Service"). I have been a special agent with the Secret Service since March, 1983.

2. In my capacity as Deputy Assistant Director for the Office of Protective Operations, I am charged with the supervision of Secret Service protective details and the security of the White House complex. As an agent, I have previously been assigned to the Presidential Protective Division.

3. I have personal knowledge of the Secret Service's policies and practices regarding security measures at events attended by the President.

<u>General Information Regarding Secret Service Protective Functions</u>

4. Pursuant to Title 18, United States Code, Section 3056, the Secret Service is charged with protecting the President, the Vice President, the President-elect and the Vice President-elect, as well as the immediate families of those individuals, and visiting foreign heads of state.

5. Pursuant to Title 3, United States Code, Section 202, the Secret Service Uniformed Division assists the Director of the Secret Service in protecting the President, the Vice President, members of the immediate families of the President and the Vice President, as well as visiting foreign heads of state.

6.  The Secret Service both designs and implements the security plan for the President, the Vice President, their families, and other protectees. In creating such a plan, the Secret Service considers many potential threats, including but not limited to terrorist attacks, lone gunmen, fire safety, environmental hazards, chemical/biological attack, medical concerns, and structural safety issues.

Security Measures at St. Matthew's Cathedral on October 2, 2005

7.  As the Deputy Assistant Director for Protective Operations, I have been involved in developing the security plan for the President's planned visit to St. Matthew's Cathedral on October 2, 2005, for the annual Red Mass. In addition, the Secret Service anticipates at least one other Secret Service protectee will be in attendance. Because Secret Service protectees will be attending the mass, the Secret Service security plan described herein supersedes the security plan described in Robert Brandt's declaration.

8.  At any event attended by the President, the Secret Service creates a secure area in order to ensure the President's physical safety. The Secret Service security plan for the President's visit to St. Matthew's Cathedral will necessarily involve a secure area around the cathedral. The secure area will encompass the cathedral itself as well as an area around the cathedral sufficient to protect it from attack. In determining the size and scope of the secure area, the Secret Service has considered a number of factors including emergency vehicle access, the potential for the emergency evacuation of the President and other building occupants, and the set off distances necessary to mitigate the effectiveness of a variety of weapons.

9.  As an initial matter, starting approximately one hour before the mass begins and continuing until approximately one hour after the mass has ended, the United States Marshal's Service and the Metropolitan Police Department will restrict vehicle traffic on Rhode Island Avenue, permitting only authorized vehicles on the street between 17th Street, N.W. and Connecticut Avenue, N.W. This will allow motorcades to drop off attendees at the front of the cathedral. Additionally, the Secret Service will set up a magnetometer screening area outside the doors of the cathedral for those individuals who wish to enter the cathedral to attend the mass. An area will be set aside for credentialed and screened media on the south sidewalk of Rhode Island Avenue, across from the entrance to the center door of the cathedral.

10. Starting approximately one hour before the mass begins,

pedestrian traffic on Rhode Island Avenue between 17th Street, N.W. and Connecticut Avenue, N.W. will be restricted (hereinafter "restricted block"). Those individuals who wish to attend the event arriving on foot will be permitted to access the restricted block and approach the cathedral. These people will pass through the magnetometers and enter the cathedral.

11. Individuals who are not attending the mass will be kept out of the restricted block as well as areas that are within weapons range of the motorcade arrival and departure area in front of St. Matthew's. The Secret Service anticipates that individuals not attending the mass will be permitted to stand: on the south sidewalk of M Street, N.W., anywhere between 17th Street, N.W., and Connecticut Avenue; on the 17th Street sidewalks; and on the Connecticut Avenue sidewalks.[1]

12. The south sidewalk of M Street has an unobstructed view both of the motorcade drop-off point and of the entrance to the cathedral. The area set aside for credentialed and screened media on the south sidewalk of Rhode Island Avenue will not obstruct the view from the south sidewalk of M Street.

13. Once the President or other protectee has entered the church, pedestrians will be permitted to access the restricted block on the south sidewalk of Rhode Island Avenue as well as the north sidewalk of M Street.

14. In advance of the President's departure, pedestrians will again be restricted from the south sidewalk of Rhode Island Avenue as well as the north sidewalk of M Street.

15. Outside the restricted area, the Secret Service does not impose any restrictions. The Secret Service considers everything outside the restricted area to be a public area.

16. Pursuant to Secret Service policy, the Secret Service security plan does not provide for any measures to segregate demonstrators from other members of the public. In fact, in the absence of knowledge of specific facts or observable action that would indicate that an individual poses a security threat, Secret Service policy requires that demonstrators are to be treated as members of the public.

17. Outside the restricted area, demonstrators and other members of the public will be free to engage in speech making, to

---

[1] Some restrictions may be necessary as motorcades pass these locations.

hold prayer vigils or religious services, to display signs or placards, and to engage in any other expressive activities that does not endanger Secret Service protectees or the public.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

5/29/05
Date

Julia A. Pierson
Deputy Assistant Director,
Office of Protective Operations,
United States Secret Service