IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| REVEREND PATRICK MAHONEY,<br>4019 Duke of Gloucester<br>Fredericksburg, VA 22407 | ) ) ) ) | |
| TROY NEWMAN<br>4004 N Old Lawrence Rd.<br>Wichita, KS 67219 | ) ) ) ) | Civil Action No.  1:05-cv-01786-RCL |
| and | ) ) | |
| THE CHRISTIAN DEFENSE COALITION,<br>4019 Duke of Gloucester<br>Fredericksburg, VA 22407 | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | |
| THE UNITED STATES SECRET SERVICE, | ) ) | |
| THE UNITED STATES MARSHALS<br>SERVICE, | ) ) ) | |
| and | ) ) | |
| DEPUTY MARSHAL JOHN DOES 1-5 | ) ) | |
| Defendants. | ) | |

## PROPOSED AMENDED AND SUPPLEMENTED COMPLAINT

The Reverend Patrick Mahoney, Troy Newman, and the Christian Defense Coalition, by

undersigned counsel, herein state their Amended and Supplemented Complaint and Causes of

Action against the United States Secret Service, the United States Marshals Service, and Deputy

United States Marshals John Doe 1 through 5:

Amended and Supplemented Complaint Page 1

## INTRODUCTION

1. By this Amended and Supplemented Verified Complaint, Mahoney, Newman and the CDC seek injunctive relief barring the USSS, the USMS and Deputy Marshals John Doe 1 through 5, and all those in active concert with any of them, including, but not limited to, officers of the USMS, from interfering with their peaceful exercise of constitutionally protected free exercise of religion, free speech, peaceable assembly, all guaranteed to the plaintiffs by the First Amendment of the United States Constitution, and with their statutory right to free exercise of religion, guaranteed by Title 42 U.S.C. § 2000bb, the Religious Freedom Restoration Act, as amended by the Religious Land Use and Institutionalized Persons Act of 2000, Title 42 U.S.C. § 2000cc.

2. Mahoney, Newman and the CDC also ask this Court to declare that the conduct of the defendants violated the plaintiffs' federal constitutional and statutory rights.

3. Mahoney and Newman also seek an award of damages in a nominal amount commensurate with the deprivation of their constitutional rights and liberties.

## JURISDICTION AND VENUE

4. In this action under the Declaratory Judgment Act and the Religious Freedom Restoration Act, Mahoney, Newman and the CDC seek equitable and declaratory relief to cure threatened deprivations of their federal rights, all of which have been inflicted or have been threatened to be inflicted by conduct taken by the defendants. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343(a)(4), 2201 and 2202.

5. Venue is appropriate in the District of Columbia, in accord with 28 U.S.C. § 1391(e),

because all of the acts that have been taken or that have been threatened to be taken that would

constitute the injury to Mahoney, Newman and the CDC occurred or are threatened to occur in

the District of Columbia, and because the USMS is headquartered in the District of Columbia.

## PARTIES

### THE PLAINTIFFS

6. Reverend Patrick Mahoney is a citizen of the United States and a resident of the

Commonwealth of Virginia.

7. Troy Newman is a citizen of the United States and a resident of Wichita, Kansas.

8. The Christian Defense Coalition is an unincorporated religious association.

### THE DEFENDANTS

9. The United States Marshals Service is an agency of the government of the United

States, currently under the direction of Acting Director John F. Clark; the USMS is under the

direction and control of the United States Department of Justice, which is headed by Alberto

Gonzalez, the Attorney General of the United States, the statutory and constitutional officer

holding ultimate responsibility and control over the policies, practices, and conduct of the United

States Marshals Service.

10. Deputy United States Marshal John Does 1 through 5 are citizens of the United States

and employed with the USMS but their true names and identities are not presently known to the

plaintiffs; upon discovery of their true names and identities, the Plaintiffs will seek leave of court

to amend the complaint and add these defendants by their true names.

10.1. The United States Secret Service is an agency of the government of the United

States, currently under the direction of W. Ralph Basham; the USSS is under the direction and

control of the United States Department of Homeland Security, which is headed by Michael

Chertoff, the Secretary of the Department of Homeland Security, the statutory and constitutional

officer holding ultimate responsibility and control over the policies, practices, and conduct of the

United States Secret Service.

## AVERMENT OF FACTS

11. Reverend Patrick Mahoney is a citizen of the United States.

12. Mahoney is a resident of the Commonwealth of Virginia.

13. Mahoney is a Christian.

14. Mahoney is an ordained Presbyterian minister.

15. Troy Newman is a citizen of the United States.

16. Newman is a resident of the State of Kansas.

17. Newman is a Christian.

18. The Christian Defense Coalition ("CDC") is an unincorporated association of
Christians involved in public activism.

19. As Christians, Mahoney, Newman and CDC are compelled by adherence to the tenets
of their religious faith.

20. The Holy Bible is, in the religious faith of Mahoney, Newman and the CDC, the
express Word of God, infallible, and binding upon their consciences and their manner of life.

21. The rule of the Holy Bible in the lives of Mahoney, Newman and the CDC includes
the biblical injunction or command against removing ancient landmarks found in chapter

nineteen of the Book of Deuteronomy.

22. As Mahoney, Newman, and the CDC understand that biblical injunction, the rule against removing ancient landmarks is violated by the government of the United States when judicial orders to remove the display of the Ten Commandments from public places are given effect.

23. The religious faith of Mahoney, Newman and CDC demands of them that they pursue the cause of corporate obedience to God's commands and to justice.

24. At the time of their activities across the street from St. Matthew's Cathedral, there was pending at the Supreme Court a petition seeking review of a case involving the display of the Ten Commandments in the courthouse of the Alabama Supreme Court.

25. The religious faith of Mahoney, Newman and CDC demands of them that they pursue obedience to the biblical command not to remove the ancient landmarks, including the Ten Commandments.

26. According the website of the United States Marshals Service (http://www.usmarshals.gov/duties/courts.htm) (visited August 25, 2005), "Ensuring the safe conduct of judicial proceedings and protecting federal judges, jurors and other members of the judiciary are principal functions of the Marshals Service."

26.1.  According to the website of the United States Secret Service (http://www.secretservice.gov/mission.shtml), " The Secret Service protects the President and Vice President, their families, heads of state, and other designated individuals; investigates threats against these protectees; protects the White House, Vice President's Residence, Foreign

Missions, and other buildings within Washington, D.C.; and plans and implements security designs for designated National Special Security Events."

### RED MASS, OCTOBER 2003

27. On information and belief, the USMS sought to carry out that purpose and function by creating a restricted zone in the vicinity of St. Matthew's Cathedral on the day of the Red Mass on October 5, 2003.

28. The exact nature of the zone and all of its details are not known to the Plaintiffs, other than what could be observed by the Plaintiffs while they were near the Cathedral.

29. When Mahoney, Newman and the CDC arrived at the Cathedral, they found that vehicular traffic in front of the Cathedral was obstructed by crossbucks, and that portions of the sidewalks across from the Cathedral were marked by yellow tape.

30. Mahoney spoke with a uniformed USMS officer, Deputy Marshal John Doe 1.

31. Deputy Marshal John Doe 1 told Mahoney that he could stand on the public sidewalk directly across from the Cathedral, but that he would not be allowed to display any signs while he did so.

32. In the area indicated by Deputy Marshal John Doe 1, Mahoney discovered a cadre of press representatives, some with video cameras, others with tape recorders and microphones.

33. Mahoney stood for a brief time in the indicated area without holding any sign.

34. While he stood, Mahoney was left unmolested by the Defendants and other police officials.

35. Mahoney then picked up a sign, approximately 2 feet tall and 3 feet across, on which

was displayed the text of the Ten Commandments.

36. Mahoney stood in the area where representatives of the press were standing on the public sidewalk, near where he had just stood without a sign.

37. In a few brief minutes, Mahoney was confronted by Deputy Marshal John Doe 2.

38. Deputy Marshal John Doe 2 ordered Mahoney to put down his sign.

39. Without obstructing anyone's passage, or making offensive physical contact with another, Mahoney continued displaying his sign.

40. Deputy Marshal John Doe 2 physically seized the person of Mahoney, and with the assistance of Deputy Marshal John Doe 3, he dragged Mahoney out of the area of the public sidewalk where the Defendants were interfering with the display of signs.

41. Deputy Marshal John Doe 2 threw Mahoney's sign on the ground outside the area from which he had just ejected Mahoney.

42. Mahoney concluded that this ejection was not an arrest, and that he was free to move about.

43. Mahoney picked up his sign, and returned to the site of the offensive seizing of his person by Deputy Marshal John Does 2 and 3.

44. Mahoney was immediately seized, and on this occasion, Deputy Marshal John Doe 2 and John Doe 3 placed Mahoney under arrest.

45. The deputies used plastic zip strip style handcuffs to secure Mahoney's arms behind his back.

46. The Defendants then transferred the custody of Mahoney to representatives of the

Washington Metropolitan Police Department, who took him to the local District station.

47. Mahoney was cited, identifying information was taken from him, and he was released.

48. Mahoney appeared for the first hearing on the charge brought against him, but the Government did not prosecute him.

49. While Mahoney was attempting to display his sign, Troy Newman was also at the location for the purpose of supporting the cause of displaying the Ten Commandments in public places.

50. When Newman was told about Mahoney's initial contact with Deputy Marshals, he took his camera and walked over to the vicinity of the activity involving Mahoney.

51. Newman took pictures of the contact between Mahoney and certain of the Defendants.

52. Newman was observed by Deputy Marshal John Doe 2 to be photographing the incident.

53. Deputy Marshal John Doe 2 asked Newman if he was with the press, or who he was with.

54. Newman stated that he was with Mahoney.

55. Deputy Marshal John Doe 2 immediately physically seized Newman and placed him under arrest.

56. Deputy Marshal John Doe 2 used plastic zip strip style handcuffs to secure Newman's arms behind his back.

## RED MASS, OCTOBER 2004

57. The Archdiocesan practice of hosting a Red Mass at the beginning of the new Term of the Supreme Court of the United States is well-established.

58. Consequently, because of their prior arrests at the hands of the Defendants, Mahoney, Newman and the CDC requested their counsel to contact legal counsel for the USMS.

59. Mahoney, Newman and the CDC so instructed their attorney for two purposes: obtaining redress of their prior injury and determining whether the USMS planned to engage in the same conduct during the Red Mass on October 3, 2004.

60. Mahoney, Newman and the CDC intended to avoid a repeat of the circumstances in which they were wrongfully arrested in 2003 by obtaining an agreed resolution, and also intended to learn whether judicial intervention would be required to avert such circumstances.

61. As a result of those negotiations, counsel for Mahoney, Newman, and the CDC, obtained an oral representation that the USMS would not be responsible for security detail activities outside of St. Matthew's Cathedral and that decisions about security and demonstrations would be made by the Metropolitan Police Department.

62. As a consequence of obtaining that representation from the Office of General Counsel for the USMS, Mahoney, Newman, and the CDC, did not seek judicial intervention in advance of the 2004 Red Mass.

63. Despite the representations made to their counsel, when Mahoney arrived at St. Matthew's Cathedral on the morning of October 3, 2004, he discovered that the USMS was in charge of security for the exterior of St. Matthew's Cathedral.

64. When USMS agents and/or employees discovered that Mahoney and those with him were seeking to pray and to display a placard containing the text of the Decalogue, they threatened to arrest them for demonstrating in an area of the public sidewalk that they claimed was closed to demonstrations.

65. The USMS agents and/or employees persisted in the threats and harassment of Mahoney and those with him, making it difficult to carry out their planned prayer vigil and demonstration.

66. While no arrests were made during this event, the event was substantially affected by the conduct of the USMS agents and/or employees, and the ability of Reverend Mahoney and his associates to exercise their religious obligations and to express their political and religious views was substantially burdened and hampered.

67. That very area of the sidewalk was not, in fact, "closed" to the public.

## RED MASS, OCTOBER 2005

68. Mahoney, Newman, and the CDC plan to conduct a further demonstration in furtherance of their religious duties during the time when the Red Mass is occurring at the disputed site on Sunday, October 2, 2005, the first Sunday in October, 2005.

69. Based on the conduct of the Defendants, Mahoney, Newman and the CDC are placed in reasonable apprehension that when they seek again to engage in the conduct described above they will be subjected to further unlawful arrests and detentions.

70. The activities described above occur on a public sidewalk adjacent to a public street in Washington, the District of Columbia.

Amended and Supplemented Complaint Page 10

71. The public sidewalk at issue is continuous through the neighborhood and in the City of Washington.

72. The public sidewalk at issue is regularly used by the public for passage through the neighborhood and in the City of Washington.

73. The public sidewalk is indistinguishable from other public sidewalks in the City of Washington, including, for example, the public sidewalk adjacent to the United States Supreme Court and the public sidewalk adjacent to the parade route used for presidential inaugurals along Pennsylvania Avenue.

74. St. Matthew's Cathedral is located across a public street from the sidewalk at issue in these circumstances.

75. Mahoney, Newman, and the CDC did not injure public health or safety, nor did they threaten injury to public health or safety.

76. By federal statute, knowing and willful obstruction, resistance or interference with a Federal law enforcement agent engaged in the performance of the protective functions authorized by relevant federal statutes is subject to the risk of fine and imprisonment upon conviction.

77. In October, 2003, when the Plaintiffs were arrested and prevented from carrying out their planned activities, the Defendants had not generally closed the sidewalk to use by the public.

78. Mahoney and others observed numerous instances in which persons passed through the vicinity using the very sidewalk to which Mahoney, Newman and the CDC had been denied access for the purpose of displaying signs depicting the text of the Ten Commandments.

79. During the time that Mahoney, Newman, and the CDC were conducting their activities, and after Mahoney and Newman were arrested, pedestrians continued to pass up and down the street at the very location where the arrests took place.

80. During the time that Mahoney, Newman, and the CDC were conducting their activities, and after Mahoney and Newman were arrested, members of the press continued to stand in the very locations where the arrests took place.

81. Mahoney, Newman, and the CDC fear that without the aid of this Court the defendants will continue to abridge their federal constitutional and statutory rights without legal justification.

81.1 Mahoney, the CDC and Newman filed suit against the USMS and five unnamed United States Deputy Marshals to redress their past constitutional injuries and to obtain injunctive and declaratory relief against future harms.

81.2 The plaintiffs filed a motion for a preliminary injunction, together with supporting declarations, setting out their claim for a preliminary injunction.

81.3 In advance of hearing on the motion for preliminary injunction, the United States Secret Service advised the Office of the United States Attorney for the District of Columbia that the President of the United States planned to attend the 2005 Red Mass.

81.4 As a consequence of the President's planned attendance at the Red Mass, the United States Secret Service assumed lead responsibility for devising the plan for protection of statutorily designated persons attending the Mass.

81.5 The United States Secret Service consented to suit and voluntarily appeared by

Amended and Supplemented Complaint Page 12

counsel at the hearing on the motion for preliminary injunction.

81.6 In opposition to the preliminary injunction motion, the United States Secret Service and the United States Marshals Service offered, by sworn declarations, general information about the security planning for the protection of statutorily protected persons attending the 2005 Red Mass.

81.7 The United States Secret Service and the United States Marshals Service offered no evidence establishing any credible threat of harm or injury to the President or any other statutorily designated protected person.

81.8 The United States Secret Service and the United States Marshals Service offered no evidence establishing that the 2005 Red Mass had been designated as a National Security Special Event, in accordance with the provisions of federal statutes or regulations.

81.9 The Court denied the motion for a preliminary injunction.

81.10 On Sunday, October 2, 2005, Reverend Mahoney and his wife, Katie Mahoney, traveled to the vicinity of the Cathedral of St. Matthew for the purpose of fulfilling their religious duties as described herein by displaying a sign containing the text of the Ten Commandments.

81.11 The Mahoneys arrived at about 8:30 a.m.

81.12 When they arrived on the scene, police tape had already been set up marking various divisions of the public sidewalks and street in the vicinity.

81.13 Reverend and Mrs. Mahoney went to the Rhode Island Avenue sidewalk across from the Cathedral, adjacent to an area where media representatives were setting up cameras and other equipment.

81.14 While in that location, Reverend and Mrs. Mahoney spoke with government officials who told them that the area where they were standing would be closed to the public, and indicating an area across M Street (on the south sidewalk) that had been designated from people carrying signs.

81.15 The Mahoneys went to the south sidewalk adjacent to M Street to check it out.

81.16 From that location, it was immediately apparent that the distance and obstructions between that location and the front of the Cathedral would make communication of their message impossible.

81.17 Katie Mahoney then went to stand in line to enter the Cathedral so that she could attend the Red Mass.

81.18 As she reached the top of the Cathedral steps to enter the Cathedral, she quickly turned and took a picture, but was unable to see the location where Reverend Mahoney stood from that position.

81.19 Reverend Mahoney then proceeded to the sidewalk across from the Cathedral.

81.20 At that time, the sidewalk across Rhode Island Avenue NW from the Cathedral was open to public passage.

81.21 Reverend Mahoney stood on that sidewalk, holding his sign, facing the Cathedral.

81.22 In that location, Reverend Mahoney was standing adjacent to a small cluster of media representatives, including television, print and radio reporters.

81.23 At about 9:00 a.m., Secret Service officers approached Mahoney and advised him of the imminent closing of the sidewalk, directing him to remove himself to one of the areas

nearby that remained open to the public, on threat of arrest if he failed to do so.

81.24 Although Mahoney was ordered to remove himself from that location, the United States Secret Service and the United States Marshals Service allowed the media representatives to remain on the sidewalk adjacent to Rhode Island Avenue, NW, across from the entrance to the Cathedral.

81.25 Mahoney complied and removed himself to the corner of Rhode Island Avenue and 17th Street NW.

81.26 Mahoney chose that location for his sign display because representations made in court indicated that the President's limousine and the vehicles bringing other dignitaries to the Cathedral would pass that location.

81.27 A number of vehicles passed by that location.

81.28 Because he was prevented from standing on the Rhode Island Avenue sidewalk across from the Cathedral, adjacent to the media, Reverend Mahoney was prevented from displaying his sign and communicating his message to the dignitaries arriving at the Cathedral entirely.

81.29 Standing at the corner of 17th Street and Rhode Island Avenue was not an ample alternative means of communicating his message.

81.30 A few minutes after 10:00 a.m., Reverend Mahoney saw the Presidential motorcade pass by, but the President was not in the motorcade.

81.31 Reverend Mahoney heard Secret Service agents in the vicinity say that the President entered the Cathedral through a back entrance, rather than from Rhode Island Avenue.

81.32 Reverend Mahoney then immediately proceeded from the corner of Rhode Island Avenue and 17th Street to the sidewalk on the south side of M Street in the 1700 block of the street.

81.33 The United States Secret Service designated that portion of the M Street sidewalk as a location for protestors.

81.34 From that location, Reverend Mahoney discovered that communicating his message to the President, any attending Justices, or other governmental officials or dignitaries was not possible.

81.35 The impossibility of communication resulted from several factors:

81.35.a  the great distance from the front of the Cathedral to the designated area made it impossible for those exiting the Cathedral from being able to read the signs or hear the messages of Reverend Mahoney nonexistent;

81.35.b the tree(s) adjacent to Rhode Island Avenue creating visual clutter that screened those exiting the Cathedral from a direct line of sight of the protest zone on the south sidewalk adjacent to M Street;

81.35.c the statuary in the park at the terminal end of the block between Rhode Island Avenue and M Street also served to screen those exiting the Cathedral from a direct line of sight of the protest zone on the south sidewalk adjacent to M Street;

81.35.d and the vehicular traffic passing on M Street also served to screen those exiting the Cathedral from a direct line of sight of the protest zone on the south sidewalk adjacent to M Street.

81.36 Katie Mahoney observed the arrival of the President just after 10:00 a.m.

81.37 Following the end of the Red Mass, Katie Mahoney exited the Cathedral using the main doors facing Rhode Island Avenue.

81.38 As she exited the Cathedral she scanned the south sidewalk adjacent to M Street and was not able to see her husband or view his sign.

81.39 At that time, she also took a photograph of the view from the steps toward the south sidewalk adjacent to M Street.

81.40 That photograph shows the visual clutter described above and demonstrates that placement of Mahoney and other demonstrators prevented their signs from being read and their messages from being communicated.

81.41 When Reverend Mahoney found his wife following the end of the Red Mass and after the crowds had cleared, she asked him why he had left the M Street sidewalk location and was stunned to learn that he had stood there the whole time with his sign and that the view from the steps of the Cathedral was too great and the line of sight too cluttered to allow for communication.

## FUTURE RED MASSES

81.42 Reverend Mahoney, Troy Newman and the CDC continue to hold the religious beliefs that are described herein.

81.43 Consequently, the Plaintiffs plan and intend to continue returning to the vicinity of the Red Mass in future years for the purpose of fulfilling their religious duties.

82.44 On October 1, 2006, the Archdiocese of Washington, DC, will again host a Red

Mass at the Cathedral of St. Matthew.

## AVERMENTS OF LAW

82. The United States Constitution protects from governmental infringement the right to free exercise of religion, the right to freedom of speech, the right to peaceable assembly, the right to due process, and the implied right to equal protection of the law.

83. Title 42 U.S.C. § 2000bb, the Religious Freedom Restoration Act, as amended by Title 42 U.S.C. § 2000cc, the Religious Land Use and Institutionalized Persons Act, protects from governmental infringement the right to religious freedom.

84. The defendants, therefore, knew or should have known that their threatened conduct, described in the foregoing Allegations of Fact, would violate the federal constitutional and statutory rights of the Plaintiffs.

85. The defendants, therefore, knew or should have known that their policy of closing an otherwise open public sidewalk to prayer vigils and/or other public observance or demonstration, as described in the foregoing Allegations of Fact, would violate the federal constitutional and statutory rights of the Plaintiffs.

86. The ban on sign displays and other public observances or demonstrations injures rights protected by the United States Constitution and the Religious Freedom Restoration Act.

87. There is no adequate remedy at law for the injuries threatened against the Plaintiffs.

CLAIMS OF INJURY

FIRST CAUSE OF ACTION:
BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS;
VIOLATION OF RIGHTS GUARANTEED
BY THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

88. The facts stated in paragraphs 1 through 87 are incorporated herein by reference as though fully set out.

89. The public sidewalk at issue in this matter is a paradigm of the traditional public forum.

90. The expressive activities conducted by Mahoney, Newman, and the CDC constitute the exercise of the right to freedom of speech, of peaceable assembly, and of religion.

91. The expressive activities conducted by Mahoney, Newman, and the CDC consist of speech constitutionally protected by the First Amendment to the United States Constitution.

92. By closing the sidewalk to the Plaintiffs' expressive activities, the defendants have violated, and threaten in the future to violate, Mahoney's, Newman's and the CDC's right to freedom of speech guaranteed by the First Amendment.

93. The joint conduct of an exercise of public expression constitutes a paradigm of the constitutionally protected right to peaceable assembly.

94. By closing the sidewalk to the Plaintiffs' joint activity, the Defendants have violated the Plaintiffs' right to peaceable assembly guaranteed by the First Amendment.

95. No threat to the security or peace of the public has been made by Mahoney, Newman, or the CDC.

96. No threat to the security or peace of the public could have been reasonably believed by the Defendants to have been made by Mahoney, Newman, and the CDC.

97. The free exercise of religion is guaranteed to Plaintiffs by the First Amendment to the United States Constitution.

98. By closing the sidewalk, the Defendants have violated the Plaintiffs' right to the free exercise of religion guaranteed by the First Amendment to the United States Constitution.

WHEREFORE Mahoney, Newman, and the CDC respectfully pray the Court grant them the relief set out below in the demand for judgment.

SECOND CAUSE OF ACTION:
BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS;
VIOLATION OF RIGHTS GUARANTEED BY
TITLE 42 U.S.C. § 2000bb, THE RELIGIOUS FREEDOM RESTORATION ACT

99. The facts stated in paragraphs 1 through 98 are incorporated herein by reference as though fully set out.

100. The prayer vigils conducted and planned to be conducted by Mahoney, Newman, and the CDC are religious exercises compelled by the tenets of their religious faith.

101. The closure of the public sidewalk substantially burdens the exercise of Mahoney's, Newman's, and CDC's religious faith.

102. No compelling government interest justifies the closure of the sidewalk.

103. The closure of the sidewalk is not the least restrictive means available to secure any compelling government interest at stake here.

104. The closure of the public sidewalk by the defendants has violated the rights guaranteed to Mahoney, Newman and the CDC by Title 42 U.S.C. § 2000bb, the Religious

Freedom Restoration Act.

WHEREFORE Mahoney, Newman and the CDC respectfully pray the Court grant them

the relief set out below in the demand for judgment.

### THIRD CAUSE OF ACTION:
### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS;
### VIOLATION OF DUE PROCESS RIGHTS
### GUARANTEED BY THE FIFTH AMENDMENT
### TO THE UNITED STATES CONSTITUTION

105. The facts stated in paragraphs 1 through 104 are incorporated herein by reference as

though fully set out.

106. The decision to close a public sidewalk to prayer vigils and other protected forms of

religious free exercise, free speech and peaceable assembly is not contained in any written

regulation or statute.

107. The unwritten policy to close public sidewalks during the Red Mass at St. Matthews

Cathedral in the City of Washington, the District of Columbia, is unconstitutionally vague.

108. The policy is vague because it is unwritten.

109. The policy is vague, as well, because, as an unwritten rule given the force of law, the

policy fails to advise the average person of common intelligence what its requirements are so that

they may comport their conduct with such requirements.

WHEREFORE Mahoney, Newman and the CDC respectfully pray the Court grant them

the relief set out below in the demand for judgment.

FOURTH CAUSE OF ACTION:
BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS;
VIOLATION OF EQUAL PROTECTION RIGHTS
GUARANTEED BY THE FIFTH AMENDMENT
TO THE UNITED STATES CONSTITUTION

110. The facts stated in paragraphs 1 through 109 are incorporated herein by reference as though fully set out.

111. Although the defendants have asserted a right to close the relevant public sidewalk to public demonstrations using picket signs, the defendants did not close the sidewalk to public passage generally.

112. By allowing the general public to continue to use the public sidewalk, despite the claim that the sidewalk must be closed to insure public safety, the defendants have deprived Mahoney, Newman and the CDC of the equal protection of the laws.

113. By allowing the general public to continue to use the public sidewalk, despite the claim that the sidewalk must be closed to insure public safety, the defendants have demonstrated and proved that there is no requirement of the public safety justifying the closure of the sidewalk to the prayer vigils conducted by Mahoney, Newman and the CDC.

114. Because there is no requirement of the public safety that justifies the decision to close the disputed sidewalk, the policy and practices of the defendants complained of herein are irrational and unreasonable, in violation of the equal protection rights of Mahoney, Newman and the CDC.

115. In addition, by arresting Newman while he used a camera to record the incidents related to the arrest of Mahoney, while leaving unmolested representatives of the electronic

media that were standing in the very same location using cameras and tape recorders to gather news and information, the Defendants have violated Newman's right to equal protection of the laws.

WHEREFORE Mahoney, Newman and the CDC respectfully pray the Court grant them the relief set out below in the demand for judgment.

## DEMAND FOR JUDGMENT

On their foregoing causes of action, Mahoney, Newman and the CDC respectfully pray that the Court grant them relief as set forth below:

116. Mahoney, Newman and the CDC respectfully pray the entry of preliminary injunctive relief, to secure the status quo ante.

117. Mahoney, Newman and the CDC respectfully pray that the injunctive relief take the form of an injunctive order barring the United States Secret Service, the United States Marshals Service, Deputy United States Marshals John Doe 1 through 5, and all persons in active concert with any of them who have actual notice of the terms of the injunctive orders, from denying Mahoney, Newman and the CDC the right to have access to the disputed public sidewalk for the purpose of displaying signs as part of public demonstrations and peaceful, nonviolent, religious prayer vigils.

118. Mahoney, Newman and the CDC respectfully pray the entry of a declaratory judgment.

119. Mahoney, Newman and the CDC respectfully pray that the declaratory relief sought in the preceding paragraph take the form of a Judgment declaring that the conduct complained of

herein constituted a violation of the federal constitutional and statutory rights of Mahoney, Newman and the CDC.

119.1 Mahoney, Newman and the CDC respectfully pray the entry of a permanent injunction against the Defendants and those in active concert with them.

119.2 Mahoney, Newman and the CDC respectfully pray that the permanent injunction bar the United States Secret Service, the United States Marshals Service, Deputy United States Marshals John Doe 1 through 5, and all persons in active concert with any of them who have actual notice of the terms of the injunctive orders, from denying Mahoney, Newman and the CDC the right to have access to the disputed public sidewalk for the purpose of displaying signs as part of public demonstrations and peaceful, nonviolent, religious prayer vigils.

120. Mahoney, Newman and the CDC respectfully pray the entry of an order granting to them their costs, including a reasonable award of attorneys fees, pursuant to Title 42 U.S.C. § 1988, the Religious Freedom Restoration Act.

121. Mahoney, Newman and the CDC respectfully pray the entry of an order granting to them their costs, including a reasonable award of attorneys fees, pursuant to Title 28 U.S.C. § 2412, the Equal Access to Justice Act.

122. Mahoney and Newman respectfully pray that the Court grant to them an award of nominal damages for the violation of their federal constitutional and statutory rights.

123. Mahoney, Newman and the CDC respectfully pray that the Court grant such other and further relief as it deems just in the circumstances.

DATED: Wednesday, January 4, 2006.

Amended and Supplemented Complaint Page 24

Respectfully submitted,

_____/s/_____

James Matthew Henderson Sr. # 452639
   *Counsel of Record*
The American Center for Law and Justice
201 Maryland Avenue NE
Washington, DC 20002
(202) 546-8890

*Attorney for the Plaintiffs*