UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REVEREND PATRICK J. MAHONEY,          )
  et al.                              )
                            )
        Plaintiffs,                  )
                            )
        v.                           )   Civil No. 05-1786 RCL
                            )
UNITED STATES MARSHALS SERVICE,       )
  et al.,                             )
                            )
        Defendants.                  )
_____)

MEMORANDUM IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

Plaintiffs concede that defendants are responsible for protecting, among others, the President and federal judges, and that many of these individuals on occasion attend the annual Red Mass held at St. Matthews Cathedral here in Washington, D.C. Nonetheless, plaintiffs argue that the security measures taken by the United States Marshals Service or the United States Secret Service during the Red Mass services held in 2003, 2004 and 2005 violated their rights under the First and Fifth Amendments to the United States Constitution, and under the Religious Freedom Restoration Act [RFRA], because they were not allowed to be close enough to the entrance of the Cathedral and in 2003 certain plaintiffs were arrested.

Plaintiffs' claim are without merit.  It is undisputed that at each of these three Red Mass services the security measures

put in place did not prevent individuals from exercising their First Amendment rights. The only reason certain plaintiffs were arrested in 2003 is because they repeatedly entered a controlled-access area where they were not authorized to be. The limited restrictions imposed at the three Red Mass events at issue were content neutral, narrowly tailored to serve an undisputed significant government interest in protecting high level government officials, and left open ample alternative channels of communication.

As to plaintiffs' Fifth Amendment claims, the Due Process "void for vagueness" argument fails because the restrictions imposed were authorized by law and any person of ordinary intelligence would have understood the contours of the restrictions imposed. Plaintiffs' Equal Protection argument is similarly without merit, as they point to no individuals who were similarly situated who were treated in a different manner at any of the Red Mass events at issue.

Finally, plaintiffs' RFRA claims fail because they cannot show the imposition of a substantial burden on the exercise of their religious beliefs. Even if they could, the restrictions imposed served the compelling government interest of protecting high level government officials and were the least restrictive means to accomplish those purposes.

Accordingly, for the reasons set forth below, and for those

-2-

set forth in defendants' prior memorandum [Defendants' Mem.],
defendants are entitled to a dismissal of, or summary judgment
on, plaintiffs' claims.

<u>ARGUMENT</u>

I.   Plaintiffs' Claims Raised in the
     Amended Complaint Are Moot.

Plaintiffs do not contend that a controversy causing them
concrete harm currently exists before this Court with respect to
the Red Mass services occurring in 2003, 2004 and 2005.  Rather,
plaintiffs argue that the case is not moot because it presents
issues capable of repetition yet evading review.  Plaintiffs'
Opp. 2-7.

Although it is undisputed that plaintiff Mahoney has been a
recurring demonstrator at the Red Mass held annually on October
1st at St. Matthews Cathedral, plaintiffs have failed to
demonstrate that there is a possibility that the issues they have
raised are capable of repetition yet evading review, a recognized
exception to the mootness doctrine.  <u>Columbian Rope Co.</u> v. <u>West</u>,
142 F.3d 1313, 1317 (D.C. Cir. 1998).  Additionally, plaintiffs
lack standing to contest what might occur at the Red Mass to be
held in October 2006, and claims concerning what might occur in
connection with that event plainly are not ripe for review.

As the Court of Appeals for this Circuit explained in
<u>Beethoven Com. LLC</u> v. <u>Librarian of Congress</u>, 394 F.3d 939 (D.C.
Cir. 2005), the "capable of repetition yet evading review"

-3-

exception to the mootness doctrine requires a two-part showing which must be made by the party invoking the exception.  First, the asserting party must show that the challenged action cannot be fully litigated, including appeals, prior to its cessation, and the period to fully litigate a challenge is considered to be approximately two years.  Id. at 950.  Second, the asserting party must demonstrate a "'**reasonable** expectation that the same complaining party would be subjected to the same action again.'" Id. at 951, quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam) (emphasis added).  The "same action" means "particular agency policies, regulations, guidelines, or recurrent identical agency actions."  Beethoven, 394 F.3d at 951.

Defendants do not agree that a challenge to limitations placed on demonstrators at a Red Mass must necessarily take two years to be resolved in any manner.  When time is of the essence courts have met the challenge, as plaintiff Mahoney well knows. In Mahoney v. Babbitt, 105 F.3d 1452 (D.C. Cir. 1997), a case involving demonstrators at the 1997 Inauguration, the District Court issued its decision in favor of the government on January 16, 1997.  The case was immediately appealed, and the Court of Appeals issued its decision on January 19, 1997.  A further appeal could have been sought before the Inaugural Parade the next day.  No additional litigation was necessary for the issues to be "fully litigated."  The same is equally possible here.

-4-

But even if the two-year rule applies in every case, this is only one part of a test that requires both parts to be satisfied in order for an otherwise moot case to be considered. <u>Beethoven</u>, 394 F.3d at 951. Plaintiffs must also show that they are likely to face the "identical agency action" again. <u>Beethoven</u>, 394 F.3d at 951.

Plaintiffs do not deny that the agency responsible for security at the Red Mass, and the security arrangements put in place for that event, vary according to whether the President intends to attend the Red Mass. <u>See</u> Defendants' Mem. at 4. Thus, it is entirely speculative for plaintiffs to claim that regardless of who attends the Red Mass, and which federal agency must plan for security attendant to that event, plaintiffs will be disadvantaged by the allocation of space accorded to demonstrators. Without such knowledge, plaintiffs cannot demonstrate a "reasonable expectation" that they will be given undesirable sidewalk footage to meet their as yet undetermined, unknowable needs for October 1, 2006.

The foregoing demonstrates that, contrary to plaintiffs' claim, they have failed to shoulder their burden of demonstrating that there is a reasonable expectation that they will be harmed again by the restrictions that they seek to challenge here, long after the Red Mass events at issue in this case. Accordingly, this case should be dismissed as moot.

Moreover, the issue concerning space allocation on the
sidewalks near St. Matthews Cathedral for October 2006, and any
possible restrictions on those seeking to engage in First
Amendment activities on those sidewalks at that time, is not ripe
for review.  As the Supreme Court established in <u>Abbott
Laboratories</u> v. <u>Gardener</u>, 387 U.S. 136 (1967), a court must
consider the "fitness of the issues for judicial decision" and
the "hardship to the parties of withholding court consideration."
<u>Id</u>., 387 U.S. at 149.  A consideration of these issues requires
an analysis of:

> (1) whether delayed review would cause hardship to the
> plaintiffs; (2) whether judicial intervention would
> inappropriately interfere with further administrative
> action; and (3) whether the courts would benefit from
> further factual development of the issues presented.

<u>Ohio Forestry Ass'n, Inc.</u> v. <u>Sierra Club</u>, 523 U.S. 726 (1998).

The Court of Appeals for this Circuit has noted that:

> The 'primary focus' of the prudential aspect of the ripeness
> doctrine is to balance 'the petitioner's interest in prompt
> consideration of allegedly unlawful agency action against
> the agency's interest in crystallizing its policy before
> that policy is subjected to judicial review and the court's
> interests in avoiding unnecessary adjudication and in
> deciding issues in a concrete setting.'

<u>Wyoming Outdoor Council</u> v. <u>United States Postal Service</u>, 165 F.3d
43, 49 (D.C. Cir. 1999), <u>quoting</u> <u>Eagle-Picher Indus.</u> v. <u>EPA</u>, 759
F.2d 905, 915 (D.C. Cir. 1985).  "A claim is not ripe for
adjudication if it rests upon contingent future events that may
not occur as anticipated, or indeed may not occur at all."  <u>Texas</u>

v. United States, 523 U.S. 296, 300 (1998).

That is precisely the case here.  There simply are too many unknown, and unknowable, facts for this Court to determine that the issues that arose at the last Red Mass, or the Red Mass events held in 2003 and 2004, will arise in precisely the same manner again as to these plaintiffs.  As such, plaintiffs' claims also are not ripe for decision.  Accord Elend v. Sun Dome, Inc., 370 F. Supp.2d 1206, (M.D. Fla. 2005) (case concerning protesters not ripe for decision when uncertainty existed regarding potential changes in the security level of the area).

Plaintiffs also lack standing to raise a claim concerning the 2006 Red Mass.  It is well settled that the test for standing, as set out in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), requires a plaintiff to show that he or she has sustained an injury in fact that is "concrete and particularized" and "actual or imminent", as opposed to conjectural, hypothetical or speculative.  Id. at 560-61; Sierra Club v. EPA, 292 F.3d 895 (D.C. Cir. 2002).  Just recently in Alliance for Global Justice v. District of Columbia, Civil No. 01-0811 (D.D.C. Aug. 30, 2006) (copy attached), the Court held that a claim for declaratory judgment concerning FBI alleged practices in connection with demonstrations in 2000 failed for lack of standing because the plaintiff could only show that the practices identified would be applied if a series of contingent events occurred some time in

the future.  Id. at 4.

Plaintiffs cannot meet the requirements for standing and ripeness with respect to any future Red Mass events, given the unknown extent of security to be put in place at such events, and thus cannot avoid the mootness of their claims by pointing to the fact that future Red Mass events will likely involve security measures of unknown scope that might adversely affect them.

II.  Plaintiffs' First Amendment Claim Must Fail.

Plaintiffs begin by arguing that the Rhode Island Avenue sidewalks near St. Matthews Cathedral constitute a public forum for First Amendment purposes and that their prayer vigils and public advocacy are speech protected by the First Amendment. Plaintiffs' Opp. at 9-12.  None of this is in dispute.  See Defendants' Mem. generally.

Plaintiffs contend, however, that defendants' restrictions on demonstration activity on the day of the Red Mass are not narrowly tailored.  Id. at 12-15.  Plaintiffs also argue that the narrowly tailoring First Amendment test in this case requires a showing of a "compelling government interest" and not a "a significant government interest."  Id. at 15.  Plaintiffs are wrong on both counts.

First, plaintiffs do not dispute that under the traditional time, place and manner analysis applicable to restrictions on First Amendment activities in a traditional public forum, the

interest at stake need only be shown to be "significant."  See, e.g., Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293-94 (1983).  Plaintiffs, however, argue that because all demonstration activity was prohibited on certain portions of the Rhode Island Avenue sidewalks near St. Matthews Cathedral, it constitutes a "complete ban" on First Amendment activity, which can be upheld only if it is narrowly drawn to serve a compelling government interest.  Plaintiffs' Opp. at 15.

Plaintiffs' argument, of course, reads the ability to impose place restrictions on First Amendment activities right out of the analysis.  Under plaintiffs' theory, if the government states that demonstrators may not occupy a particular space within a public forum, then the government has imposed a complete ban on First Amendment activities in that particular space, and the test to uphold such a restriction must be based on the showing of a compelling government interest.  Plaintiffs cite to no case that stands for such a proposition.

Rather, plaintiffs rely only on the Supreme Court's decision in United States v. Grace, 461 U.S. 171 (1983), in which the Court noted that "an absolute prohibition on a particular type of expression will be upheld only if narrowly drawn to accomplish a compelling government interest."  Id. at 177.  This statement in Grace cited to Perry Educational Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983), which noted that for the

-9-

government "to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest . . . ." Id. Since plaintiffs do not dispute that the restrictions here were content-neutral, compare Defendants' Mem. at 18 with Plaintiffs' Opp. generally; Exh. I, attached, (transcript of September 30, 2005 hearing in this case) at 54 ("the restrictions here are clearly content neutral"), plaintiffs' reference to the "compelling interest' test is plainly misplaced. The appropriate test is whether defendants' restrictions around St. Matthews Cathedral on the day of the Red Mass are sufficiently narrowly tailored to serve a "significant" government interest.

Plaintiffs concede that there is an important interest in providing security and protection to persons designated by statute. Plaintiffs' Opp. at 15. This Court similarly noted "the strong security interest in the protection of the President and the other protected individuals . . . ." Exh. I at 52. Plaintiffs argue, however, that if such an interest did not justify the Supreme Court sidewalk closure in Grace, it cannot serve as a sufficient interest to justify any sidewalk closures for the Red Mass.

The facts in Grace are entirely different. In that case, the prohibition on using certain sidewalks near the Supreme Court building ran only to demonstrators; members of the general public

were allowed to freely use the sidewalks just as they would use any other public sidewalk. Under such circumstances, the Court found that an asserted need to protect the Supreme Court and its occupants was not furthered by the restrictions imposed.

By contrast, it is undisputed that here the sidewalk portions closed off to plaintiffs were not being used like any other city sidewalk by other individuals. Plaintiffs concede that in 2005 only members of the press were allowed into the portions closed off to plaintiffs. Plaintiffs' Opp. at 20. Although plaintiffs argue that in 2003 and 2004 sidewalks were being used by members of the general public, plaintiffs' evidence is to the contrary. The Mahoney Declaration, Plaintiffs' Exh. 1, concedes that in 2003 portions of the sidewalks were marked by crossbucks and yellow tape. Id. at ¶ 19. Mr. Mahoney admits that when he was arrested he was standing where representatives of the press were standing.[1] Id. at ¶ 26. He does not allege that other members of the general public were standing in the same area. Id.

With respect to 2004, plaintiff Mahoney makes no statement in his declaration that members of the general public were standing in the same location where he was on the date of the Red

---

[1] Plaintiff Mahoney tries to make much of the fact that he was holding a sign when he was arrested, but he concedes that he was arrested at a place that was different from the one where he stood without a sign. Mahoney Dec., ¶ 26.

Mass.  In fact, he does not even mention the presence of anyone but himself, "those with me", and employees of the Marshals Service.  Mahoney Dec., ¶¶ 45-48.  He also does not allege that he was required to move from this location.  Id.  Accordingly, plaintiffs' reliance on the decision in Grace is inapposite, because the facts attending plaintiffs' circumstances were altogether different.

Plaintiffs also point to Boos v. Barry, 485 U.S. 312 (1988), in which the Supreme Court struck down a content-based prohibition on the carrying of signs carrying certain types of messages near foreign embassies in this city.  Because the prohibition did not extend to individuals carrying signs that favored the policies of the foreign government whose embassy was the target of the demonstrations, the government's asserted need to protect diplomats was found unserved by the restrictions imposed.  Again, these facts are at odds with those in the instant case, in which there was no content-based restrictions and no demonstrators were allowed into the restricted areas.

Plaintiffs also point to Tinker v. Des Moines Independent School District, 393 U.S. 503, 508-09 (1969), in which students were prohibited from wearing armbands protesting the Vietnam War because school officials feared such activity might create a disturbance in the schools.  The Supreme Court held that a mere fear that the wearing of an armband might cause an argument or

disturbance was insufficient to curtail such First Amendment activities.  Id. at 508-09.

Contrary to plaintiffs' claims, there is no comparison between the facts in Tinker and the facts at issue here.  In Tinker school officials worried that a difference of opinion on the war could cause a disturbance.  Here, defendants were worried that allowing anyone within weapons' distance of the President of the United States, or other high level government officials, could result in their deaths.  In Tinker the Court spoke of "undifferentiated fear"; here, the fear could not be more specifically targeted.  An attempt to assassinate former President Reagan was made with a hand gun at close range.  Indeed, history reminds us that four Presidents have been assassinated and other assassination attempts have been made.  In this post 9-11 era, fear that government officials in Washington, D.C. could be the targets of would-be terrorists is based on actual prior events; they were targets on 9-11.  And unlike in Tinker, where the Court stated that the First Amendment required risking the possibility of a disturbance in a school setting, the First Amendment certainly does not require risking the lives of top government officials by placing them unprotected within weapons' range of individuals who may harbor criminal intent.

The fact that plaintiffs appear to pose no risk to these officials is irrelevant.  As the Court of Appeals noted in White

House Vigil v. Clark, 746 F.2d 1518, 1534 n.106 (D.C. Cir. 1984),
"[t]here is no suggestion, of course, that [] [plaintiffs]
*themselves* would engage in activity that threatens [][government
officials] . . . We are concerned instead with persons who harbor
less beneficent intentions." Id.; Heffron v. ISKCON, 452 U.S.
640, 652 (1981) (justification for restrictions imposed should
not be judged solely by conduct of the plaintiffs).

Thus, plaintiffs' attempt to show that the significant
interests at stake in connection with the Red Mass did not
justify creating a limited buffer zone around St. Matthews
Cathedral is untenable. Indeed, at the hearing on plaintiffs'
motion for a preliminary injunction this Court concluded that
"the limited buffer zone here is appropriate and that it is
narrowly tailored." Exh. I at 53. Plaintiffs offer no argument
or evidence to show any other conclusion is warranted.

Plaintiffs apparently concede that ample alternative
channels of communication were made available to them, as they
fail to respond to defendants' argument on this issue. Compare
Defendants' Mem. at 23-24 with Plaintiffs' Mem. generally. This
Court also previously concluded that "reasonable alternative
channels are established", Exh. I at 53, and plaintiffs make no
effort to show otherwise. Accordingly, this point should be
deemed conceded. See Local Rule 7(h).

Finally, plaintiffs argue that closing the sidewalks to

-14-

demonstrators during the Red Mass constitutes an impermissible exercise of "unbridled discretion" by government officials. Plaintiffs' Opp. at 16.  Plaintiffs' argument in this regard, however, is directed at a system imposing First Amendment restraints, such as a regulation.  <u>Id</u>.  In the instant case, no system containing a prior restraint is at issue.

Rather, temporary closures are at issue, the contours of which may vary from year to year dependent upon the attendees at the Red Mass.  No unbridled exercise of discretion occurred in the establishment of a secure area for those attending the Red Mass.  To the contrary, as this Court previously observed, in determining the size and scope of the secure area "the Secret Service considered a number of factors, including the emergency vehicle access, potential for emergency evacuation of the President and the building occupants, and the setoff distances necessary to mitigate the effectiveness of a variety of weapons." Exh. I at 52-53.  All of these factors served to guide the government's exercise of discretion in determining the contours of the security measures to put in place that would affect demonstrators.  <u>See</u> Defendant's Mem., Exh. E, ¶ 8.

Thus, plaintiffs have failed to undermine defendants' showing that the limited security measures put in place at the Red Mass events involved only content-neutral restrictions that were narrowly tailored to serve a significant government interest

and left open ample alternative channels of communication.
Consequently, plaintiffs' First Amendment claim must fail.

    III.   Plaintiffs' Claim Under the Religious
          Freedom Restoration Act Fails to State a Claim or,
          <u>Alternatively, Judgment to Defendants is Appropriate.</u>

    A.  <u>Plaintiffs' Damages Claims Must Be Dismissed.</u>

Plaintiffs contend that their claim for damages is pled
under RFRA and they concede that it must be denied based on the
Court of Appeals's decision in <u>Webman</u> v. <u>Fed. Bur. Of Prisons</u>,
441 F.3d 1022 (D.C. Cir.), <u>reh'g and reh'g en banc denied</u> (June
20, 2006), holding that the government has not waived sovereign
immunity for damages claims to be brought under RFRA.  Plaintiffs
apparently want to bring this issue to the Court of Appeals
again.  Plaintiffs' Opp. at 26.

While they certainly may try, plaintiffs are correct that
this Court must deny their claim, and thus their "request that
the Court expressly deny the claim for damages against the United
States Marshals Service and the United States Secret Service on
the ground of sovereign immunity", <u>id</u>., should be granted.

    B.  <u>Plaintiffs' Remaining RFRA Claims Must Fail.</u>

Plaintiffs argue that the government substantially burdened
their free exercise of religion by not allowing them to stand
where they wanted during the Red Mass, and that this action
violated RFRA.  Plaintiffs' Opp. at 18-19; 42 U.S.C.
§ 2000bb(b)(1).  Yet as defendants pointed out previously,

plaintiffs advance no claim that their religious beliefs require them to communicate at a particular location in the city of Washington, D.C., or that standing on a particular sidewalk in this city has any religious significance whatsoever.  See Defendants' Mem. at 26.  Plaintiffs offer no response to defendants' argument that they have failed to show that being deprived of the ability to stand **at a particular location** in this city creates a substantial burden on any of their religious practices.  Compare Defendants' Mem. at 24-30 with Plaintiffs' Mem. at 18-19.

Making no attempt to distinguish any of the cases relied upon by defendants to show that the restrictions at issue impose no substantial burden on plaintiffs' religious activity or expression, plaintiffs simply cite in a footnote to the Fourth Circuit's decision in American Life League, Inc. V. Reno, 47 F.3d 642 (4th Cir. 1995).  Plaintiffs' Opp. at 18 n.9.  In American Life League, the Fourth Circuit noted that the plaintiffs had specifically alleged that their religious opposition to abortion required them to physically obstruct, through peaceful means, access to abortion clinics.  The Fourth Circuit therefore assumed that the government's denial of an opportunity for such action substantially burden the plaintiffs' religious exercise.  Id., 47 F.3d at 654-55.

By contrast here, plaintiffs have not alleged that the

exercise of their religious beliefs requires them to be within a certain distance of St. Matthews Cathedral on the day of the Red Mass. On the contrary, plaintiff Mahoney merely states in his declaration that his religious beliefs require him "not to remove the ancient landmarks, including the Ten Commandments," and that he must call the country's leaders to obey this command. Plaintiffs' Exh. 1 at ¶ 11.

Even if not allowing plaintiffs to engage in their demonstration activities within a certain distance of St. Matthews Cathedral on the day of the Red Mass has an effect on plaintiff's religious expression, it cannot be said to have substantially burdened that expression. Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir.), cert. denied, 515 U.S. 1166 (1995) (not all regulation of religious activity or expression requires showing of compelling state interest); 139 Cong. Rec. S14352 (Daily Ed. Oct. 26, 1993) ("[The Act] does not require the Government to justify every action that has some effect on religious exercise.  Only action that places a substantial burden . . . must meet the compelling State interest [test]."); Branch Ministries, Inc. v. Rossotti, 211 F.3d 137, 142 (D.C. Cir. 2000) (the imposition of a substantial burden relates to the observation of a central religious belief and whether the adherent has been pressured to modify his behavior and violate his beliefs).

Plaintiffs have failed to demonstrate a substantial burden on the free exercise of their religious rights.  They do not dispute that they had the opportunity to spread their religious messages in the vicinity of the Red Mass in 2003, 2004 and 2005.  The fact that they were not at the precise location of their choice does not mean that a substantial burden on the exercise of their religious beliefs was imposed.

Nonetheless, even if this Court were to conclude that plaintiffs had carried their burden of showing the imposition of a substantial burden under RFRA, defendants have demonstrated a compelling interest in imposing the restrictions at issue and that they were done in the least restrictive means.[2]

Plaintiffs do not appear to challenge the general proposition that the government has a compelling interest in ensuring the safety of high level government officials seeking to attend the Red Mass.  <u>Compare</u> Defendants' Mem. at 3-8 <u>with</u> Plaintiffs' Opp. at 19-20.  Rather, their dispute appears to be with the means employed to advance that interest with respect to the Red Mass.  Relying on <u>United States</u> v. <u>Grace</u>, plaintiffs argue that the interest in protecting important government officials cannot justify closing portions of sidewalks near where such persons are located.  Plaintiffs' Opp. at 19.  As shown

---

[2]  The "least restrictive means" test does not apply to plaintiffs' First Amendment claims.  <u>E.g.</u>, <u>Clark</u> 468 U.S. at 299.

above, however, this argument gets plaintiffs nowhere, because
the facts in Grace are unlike the facts at issue here. See supra
at 10-12.[3]

Plaintiffs next argue that even if the government interest
at issue is compelling, there were less restrictive means that
could have been taken to meet those interests, such as placing
security personnel in the location where the demonstrations
occurred, so demonstrators could not have been used as a shield
for wrongful conduct, or screening individuals so they could get
closer to St. Matthews Cathedral. Plaintiffs' Opp. at 21.

Plaintiffs' argument, however, assumes that the only concern
behind setting up a limited security buffer was to keep a safe
distance between government officials and those with criminal
intent. However, the Pierson Declaration makes clear that other
considerations involved "emergency vehicle access, [and] the
potential for the emergency evacuation of the President and other
building occupants. . . ." Defendants' Mem., Exh. E at ¶ 8.
Allowing greater numbers of people to place themselves closer to
St. Matthews Cathedral, even if screened, would adversely affect
these considerations that formed part of the basis for the
restrictions imposed.

Thus, because plaintiffs have failed to show that their

---

[3]  The same is true for plaintiffs' citation to Boos v.
Barry, 485 U.S. 312 (1988). See supra at 12.

desire to stand on a particular sidewalk in this city during the
Red Mass bears on their religious practices, the prohibition
against plaintiffs being allowed to stand in a limited
controlled-access area closed for security reasons does not
substantially burden their free exercise of religion.  Even if it
did, the undisputed compelling government interest in protecting
the safety of high level government officials justified creating
a limited buffer zone near St. Matthews Cathedral.  Thus,
plaintiffs' RFRA claims should be denied.

IV.  Plaintiffs' Fifth Amendment Claims
     Fail On All Counts.

     A.   Plaintiffs' Claim of a Violation of
          Due Process is Without Merit.

Plaintiffs' due process argument, to the extent it can be
discerned, is that no statute or regulation allows defendants to
prohibit demonstration activity on the sidewalks near St.
Matthews Cathedral and therefore defendants are enforcing a
"fictional, nonexistent, rule" which is void for vagueness
because the ban fails to establish a definite standard of
conduct.  Plaintiffs' Opp. at 22-25.  Plaintiffs' "void for
vagueness" argument, therefore, appears to rest entirely upon
their claim that the restrictions are "imagined and fictional"
because no authority justifies them.  Id.  Presumably then,
plaintiffs' argument in this regard is undone by a showing that
defendants had authority to restrict access to certain portions

of the sidewalks near St. Matthews Cathedral during the Red Mass.

Certainly the Secret Service, charged by statute with protecting the President and the Vice President, among others, see 18 U.S.C. § 3056; 18 U.S.C. § 1752, is entitled to enforce secure perimeters around areas where these protectees are located.  This Court also recognized this authority when, in denying plaintiffs' motion for a preliminary injunction, the Court stated that "public interest dictates that the Secret Service be given appropriate leeway to protect the President and the other officials deserving of protection."  Exh. I at 52. Given the Secret Service's statutory authority to take appropriate measures to protect the President and Vice-President, coupled with the fact that plaintiffs' First Amendment activities are subject to reasonable time, place and manner restrictions, e.g., Clark, 468 U.S. at 293-94, plaintiffs' argument that the Secret Service's restrictions at the October 2005 Red Mass were without authority, and therefore "fictional", plainly is without merit.

Similarly, the Marshals Service is charged with protecting members of the judiciary.  28 U.S.C. § 566(e)(1)(A).  As the accompanying Declaration of Thomas E. Hedgepeth explains, as part of the Marshals Service's protection plans for the Red Mass, the Marshals Service requests the District of Columbia Metropolitan Police Department [MPD] to close certain streets near the

location of the Red Mass.  Id at ¶ 2.  MPD then provides the
logistical support of closing portions of streets and sidewalks
pursuant to 24 DCMR §§ 2100 et seq.  Hedgepeth Dec., ¶ 2.

Thus, plaintiffs' claim that no authority exists for closing
portions of streets and sidewalks during the Red Mass, and thus
any such closures are void for vagueness, is plainly without
merit.

Finally, plaintiffs offer no response to defendants' showing
that, as alleged in their Amended Complaint at ¶ 29, in 2003 they
found a police line of yellow tape and crossbucks put in the road
in front of the Cathedral to limit access to that area and that
any person with any common sense would understand this meant the
area was not available to members of the general public.
Similarly in 2004 and 2005, plaintiffs make no argument that they
were unaware of what areas were restricted.  Rather, their
argument is simply that the areas they knew to be restricted
should not have been so.  While that raises the First Amendment
considerations discussed previously, see supra at 8-15, it
certainly dues not implicate the "void for vagueness" doctrine.

Consequently, plaintiffs' due process claim should be
dismissed.

    B.    Plaintiffs' Claim of Alleged Unequal
          Treatment is Without Merit.

Plaintiffs' claim of a denial of Equal Protection is limited
to the 2003 Red Mass, at which plaintiff Mahoney was arrested for

crossing a police line into a controlled-access area.
Plaintiffs' Opp. at 5; Defendants' Mem. at 4-6 & Brooks Dec., ¶
5.  Tellingly, plaintiffs do not dispute that the Equal
Protection component of the Fifth Amendment's Due Process Clause
requires them to demonstrate that similarly situated persons
whose situations "are arguably indistinguishable" have been
treated differently than them.  Compare Defendants' Mem. at 32-
33, quoting City of Cleburne v. Cleburne Living Center, Inc., 473
U.S. 432 (1985), with Plaintiffs' Opp. at 21-22.  Yet plaintiffs
point to no similarly situated individuals who were treated
differently than they were with respect to their presence on the
city sidewalks near St. Matthews Cathedral during a Red Mass.
Rather, plaintiffs simply argue that members of the press and
other individuals merely passing through the vicinity were not
treated as they were.  Plaintiffs' Opp. at 22.

Tellingly, plaintiffs offer no response to defendants'
argument that they are not similarly situated to members of the
press, who carry credentials and were screened.  See Defendants'
Mem. at 34, citing Pierson Dec., ¶ 9; Brandt Dec., ¶¶ 9, 16.
They also offer no response to defendants' showing that several
demonstrators, including plaintiff Mahoney, repeatedly crossed
the police line to engage in demonstration activities, and after
having been informed that if they did not move back behind the
police line voluntarily they would be arrested, plaintiff Mahoney

-24-

and other demonstrators "either sat down and refused to move or stated explicitly that they wanted to be arrested." <u>Id</u>. at ¶ 5. Plaintiffs make no attempt to show that any other individuals acted in the manner in which they did but were not arrested. <u>See</u> Plaintiffs' Opp. at 21-22.

Under such circumstances, plaintiffs' Equal Protection claim fails because they have failed to demonstrate that they were treated differently than similarly situated individuals.

CONCLUSION

For the foregoing reasons, and those set forth in defendants' prior memorandum, defendants respectfully submit that their motion to dismiss or, in the alternative, for summary judgment be granted.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226