IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK MAHONEY, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) Civil Action No. 1:05-cv-01786-RCL |
| -vs- | )<br>) |
| THE UNITED STATES MARSHALS SERVICE, *et al.*, | )<br>)<br>) |
| Defendants. | ) |

**CONTESTED RULE 59 MOTION TO ALTER OR AMEND THE JUDGMENT
WITH STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT**

MOTION TO AMEND AND TO SUPPLEMENT

Come now the plaintiffs, Reverend Patrick Mahoney, Troy Newman, and the Christian Defense Coalition, by counsel undersigned, and respectfully move the Court for an Order, in the form submitted herewith, amending and supplementing the Judgment entered in this action on September 27, 2006, in the above-referenced matter, in the form annexed to this motion.

For and in support of the motion, the Plaintiff submits herewith his Statement of Points and Authorities Supporting the Motion to Alter or Amend the Judgment.

PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES
SUPPORTING THE MOTION TO ALTER OR AMEND THE JUDGMENT

1.      Prior to the filing of this motion, counsel for the plaintiffs conferred with counsel for the defendants on the subject matter of the motion, and the defendants do not consent to the relief sought by this motion.

2.      This Court entered judgment for the defendants on all counts of the Amended Complaint,

on September 27, 2006.

3.     This motion, brought pursuant to F.R.Civ.P. 59, is timely filed in accordance with the requirements of that rule, together with F.R.Civ.P. 6(a).

### Grounds for Alteration or Amendment of the Judgment

<u>The First Amendment Claims</u>

4.     The Court entered judgment for the defendants on the First Amendment claims asserted by the plaintiffs.[1]  That judgment is in error, as demonstrated within, and should be altered or amended to conform the decision with governing law.

5.     The Court erred in concluding that the government's actions are not subject to strict scrutiny.

   a.     The Court held that the conduct of which the plaintiffs complain is not subject to strict scrutiny as an absolute prohibition on a particular type of expression.  Memorandum Opinion at 13-14 (herein after cited as "Opn.").  The Court's conclusion cascaded into a failure to bring sufficient scrutiny to bear on the restrictions at issue here.  True, the Court quite correctly noted that additional restrictions on speech, including an absolute prohibition on a particular type of expression, would be sustained against constitutional attack only if narrowly drawn to accomplish a compelling governmental interest. Memorandum Opinion at 13.  That reflects a long standing governing principle under the First Amendment. See <u>United States v. Grace</u>, 461 U.S. 171, 176 (1983).  Merely stating the relevant standard does not demonstrate,

---

   [1]Plaintiffs alleged that the defendants' conduct violated three rights secured by the First Amendment. <u>See</u> Amended and Supplemented Complaint ¶¶ 89-98.

however, the application of it to the facts of any particular case. [2]

    b.    In explanation of its conclusion, the Court further stated

> the restrictions here did not amount to a total prohibition on their speech. While plaintiffs may have been denied the ability to demonstrate on the precise part of Rhode Island Avenue that they considered optimal, they were given adequate alternative channels through which to exercise their speech rights.

Opn. at 13-14. In so doing, the Court adopted a non sequitur. It does not prove that a prohibition on speech in one location is not absolute simply to observe that such speech is tolerated in a different locale. In essence, the Court's opinion purports to dispose of this issue:

> whether the restrictions imposed are an absolute prohibition on a particular type of expression calling for the application of strict scrutiny.

Rather than analyzing that issue, however, the Court instead addresses a separate issue relevant to the time, place, and manner:

---

[2] On review, the D.C. Circuit will be called upon to consider whether the judgment entered by this Court constituted an abuse of discretion or other legal error. For that reason, the Court should alter or amend the judgment to provide an analysis leading to its conclusion that the challenged restriction does not constitute a complete prohibition  A reviewing court examining a decision for an abuse of discretion must determine "whether the decision maker failed to consider a relevant factor, whether he relied upon an improper factor, and whether the reasons given reasonably support the conclusion." Note, Perfecting the Partnership: Structuring the Judicial Control of Administrative Determinations of Questions of Law, 31 VAND. L. REV. 91, 95 (1978). In the words of Justice Frankfurter, "We must not invite the exercise of judicial impressionism. Discretion there may be, but 'methodized by analogy, disciplined by system.' Discretion without a criteria for its exercise is authorization of arbitrariness." Brown v. Allen, 344 U.S. 443, 496, 97 L. Ed. 469, 73 S. Ct. 397 (1953) (quoting CARDOZO, THE NATURE OF THE JUDICIAL PROCESS, 139, 141 (1921)). Cf. Pigford v. Johanns, 415 F.3d 12, 23 (D.C. Cir. 2005) ("While our review is deferential, an abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, fails to consider a relevant factor, or applies the wrong legal standard") (citing cases).

>   whether the restrictions imposed by the Government survive intermediate scrutiny
>   in part because <u>ample</u> (not merely "adequate") alternative <u>channels</u> of
>   communication are left available to the speaker.

<u>See</u> Opn. at 13-14.

    c.    <u>Mahoney v. Babbitt</u>, 105 F.3d 1452 (D.C. Cir. 1997), a decision of the D.C. Circuit is instructive. There, the National Park Service had attempted, quite similarly to this case, to exclude Reverend Mahoney and others from a public sidewalk adjacent to Constitution Avenue on the day of the 1997 Presidential Inauguration and the contemporaneous Inaugural Parade. The D.C. Circuit directly rejected the power of the government to do what the Court has said here that the government may do:

>   there is no authority for the proposition that the government may by fiat take a
>   public forum out of the protection of the First Amendment by behaving as if it
>   were a private actor. Indeed, such authority as exists is directly to the contrary.

105 F.3d at 1457. <u>See</u> <u>also</u> <u>Henderson v. Lujan</u>, 964 F.2d 1179, 1182 (D.C. Cir. 1992) (discussed by the D.C. Circuit in <u>Mahoney</u>, 105 F.3d at 1458). The <u>Mahoney</u> Court stated, "[n]either will we permit the government to destroy the public forum character of the sidewalks along Pennsylvania Avenue by the ipse dixit act of declaring itself a permittee." 105 F.3d at 1458. While here the government has foregone the administrative nicety of granting itself a permit for use of the property, as it did in <u>Mahoney</u>, the result is the same. The defendants arrogated the public sidewalk to its own usage by an executive <u>ipse</u> <u>dixit</u>, and that arrogation violated the plaintiffs' right to freedom of speech.

    d.    As a consequence of dispensing with the need to apply strict scrutiny, the Court failed to demonstrate that the challenged restrictions would survive such scrutiny. The

unavoidable result of that omission is that the Court cannot now, without bringing such analysis to bear, conclude that its error was harmless to the plaintiffs.  For this reason, the motion to alter or amend the judgment should be granted.

6.      The Court erred in concluding that the challenged restrictions survived scrutiny as a reasonable regulation of time, place and manner.

    a.      While the Court iterated the correct governing principles for time, place and manner analysis, see Opn. at 13 (citing cases), the Court erroneously concluded that the challenged restrictions passed the requirement that ample alternative channels of communication be left open.  Opn. at 21.  The Court's error is plain when viewed in light of the governing precedent.  See Mahoney v. Babbitt, 105 F.3d 1452 (D.C. Cir. 1997).  As a consequence of its error, the Court erroneously affirmed an unconstitutional transformation of the traditional public forum sidewalk at stake here into the government's private reserve.

    b.      The plaintiffs sought access to the south sidewalk adjacent to Rhode Island Avenue. In face of that claim to access, the government imposed a virtual "cone of silence" on that sidewalk, excluding all exercise of First Amendment rights of freedom of speech. In doing so, the government's actions were indistinguishable in purpose, justification or effect from the exclusion of Reverend Mahoney from the sidewalk adjacent to the Inaugural Parade route that the National Park Service attempted in 1997.  In Mahoney, the D.C. Circuit stated:

> We note briefly one other defense of the government, that is that appellants were granted permits for two other areas on Inauguration Day, areas not on Pennsylvania Avenue and not along the parade route. Appellees have offered us no authority for the proposition that the government may choose for a First Amendment actor what public forums it will use. Indeed, it cannot rightly be said that all such forums are equal. The very fact that the government here struggles to

> bar the speech it fears or dislikes from one forum while offering, whether freely or grudgingly, access to another belies the proposition of equality.

105 F.3d at 1459. The Court's conclusions here, that ample alternative channels of communication were left open despite the challenged restriction, is plainly inconsistent with the holding the D.C. Circuit in <u>Mahoney</u>.

  c. The Court's judgment for the defendants on the plaintiffs' First Amendment claims rests on the Court's error in application of the reasonable time, place, and manner test. For this reason, the motion should be granted.

7. The Court erred in analogizing this case to <u>Heffron v. ISKCON</u>, 452 U.S. 640 (1981), and in relying on <u>Heffron</u> to reach judgment for the defendants. The Court erroneously concluded that <u>Heffron</u> was the relevant precedent. That case involved a dispute over the contours of a property that was not part of the traditional public forum. <u>See</u> 452 U.S. at 651 (distinguishing Minnesota State Fairgrounds from traditional public forum sidewalks and streets). Analogizing to a designated forum case, <u>Heffron</u>, to derive a rule governing traditional public forum cases led the Court to discount the differences between permissible governmental impositions in <u>Heffron</u> and here. For this reason, the Court erred in assessing the reasonability of the government's restrictions under time, place, and manner analysis. That error is compounded by the Court's failure to discuss and to distinguish the earlier <u>Mahoney</u> decision or the decision in <u>Henderson v. Lujan</u>. For this additional reason, the motion to alter or amend should be granted.

RFRA Claims

8.  The Court erroneously entered judgment for the defendants on the RFRA claim. The Court misapprehended the principles governing claims brought pursuant to RFRA.

    a.  The Court reasoned that plaintiffs had not "properly alleged that their religious exercise has been substantially burdened." Opn. at 23. To the contrary, however, the plaintiffs alleged, "The prayer vigils conducted and planned to be conducted by Mahoney, Newman, and the CDC are religious exercises compelled by the tenets of their religious faith," and "The closure of the public sidewalk substantially burdens the exercise of Mahoney's, Newman's, and CDC's religious faith." See Amended and Supplemented Complaint, ¶¶ 100-01. The Court's conclusion was derived from its reasoning that not every "religiously motivated act is the kind of exercise of religion protected by RFRA." Opn. at 23 (citing Henderson v. Kennedy, 253 F.3d 12, 16-17 (D.C. Cir. 2001).

        i.  That conclusion is inconsistent with the amendment of RFRA accomplished by Congress when it enacted the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, et seq.:

> RFRA had defined 'exercise of religion' as 'the exercise of religion under the First Amendment to the Constitution.' 42 U.S.C. § 2000bb-2(4) (1999). The Religious Land Use and Institutionalized Persons Act (RLUIPA), Pub. L. No. 106-274, §§ 7-8, 114 Stat. 803, 806 (2000), altered the definition to mean 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief. ' 42 U.S.C. § 2000cc-5(7)(A), incorporated by 42 U.S.C. § 2000bb-2(4).

Henderson v. Kennedy, 265 F.3d 1072, 1073 (D.C. Cir. 2001). Even if the plaintiffs' prayers and demonstration were located at the far periphery of the religious judgments and compulsions

that govern their conduct, amended RFRA applies in the case of "any exercise of religion." When Congress chose that language, it took pains to explain that protected exercises were not only those that were either compelled by a system of religious belief or central to a system of religious belief. Nonetheless, in granting judgment for the defendants, the Court immediately retrenched to the unamended version of RFRA: "They certainly do not allege that their religion compels them to demonstrate in favor of the public display of the Ten Commandments at all times and in all places, and they offer no evidence that their religion requires them to demonstrate at this particular time and place as compared to all others." Opn. at 24. In doing so, the Court erred in its construction of RFRA and in its application of the governing law to the facts of this case.

      ii.    The Court ignored the religious tenor and nature of the plaintiffs' activities, conflating plaintiffs' religious animus with the Court's conclusion that the plaintiffs were motivated principally by a desire to "direct their political message" at "a target-rich audience of prominent government officials." Opn. at 24.[3] With respect, the Court's focus on the "targeting" of "prominent government officials" blinded it to the religious character and motivation of the plaintiffs. That conclusion fails to take account of the possibility that an act may have a dual character, and as a result enjoy the benefit of more than a single constitutional provision. Cf. Employment Div. v. Smith, 494 U.S. 872, 881-82 (1990) ("The only decisions in

---

[3]That the March on Washington was designed to bring to the attention of the Congress, of the President, and of the people, the plight of African Americans a century after the formal end of slavery as a legal institution cannot be justifiably viewed only as a political act. To do so would to derogate the religious underpinnings of the March and the religious motivations of the Marchers. Clearly there are times when a thing, or an act, can be two things at once.

which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections) (collecting examples of dual character exercises).

  b.  The Court rejects the plaintiffs' assertion of a RFRA claim here, in substantial part, on the ground that plaintiffs did not "allege that their religion compels them to demonstrate in favor of the public display of the Ten Commandments at all times and in all places . . . ." Opn. at 24. The Court is correct that the plaintiffs have neither pled nor proved such a claim. But the Court errs in concluding that the superfine combing of plaintiffs' religious motivations can justify the government's restrictions or the Court's disposition of plaintiffs' claims. We leave it to the government to argue, if it thinks it wise to do so, that prohibitions on attending weekday religious services, for example, can be justified on the ground that the particular religion on teaches a Sabbath or Sunday <u>compulsion</u>. Such an argument would ignore the substantial religious motivations found in weekday attendance at religious services. And here, in like vein, it is no answer to the plaintiffs' claimed injury that while they acted out of religious motivation, the motivation was not the product of a compulsory tenet of some faith.

  c.  In disposing of plaintiffs' argument that the challenged restrictions constituted a substantial burden on religious exercise, the Court stated, "even if the Court were to assume that plaintiffs were exercise their religion by demonstrating in front of the Mass, there would still be no substantial burden on this exercise, <u>for the same reasons the Court has held that the time, place, and manner restrictions in this case were reasonable</u>." Opn. at 24. The Court's analysis

more than suggests that substantial burden analysis is identical with time, place and manner analysis.  The Court cites no decision of the Supreme Court so stating, nor any decision of the D.C. Circuit, nor even non-binding precedent from another court.[4]  For this additional reason, the motion to alter or amend should be granted.

## CONCLUSION

For all the foregoing reasons, the Court should grant the motion to alter or amend the judgment, in the form of an order such as the proposed one submitted herewith.

Dated:  Thursday, October 12, 2006.

Respectfully submitted,

/s/
_____
James Matthew Henderson Sr. # 452639
   *Counsel of Record*
The American Center for Law and Justice
201 Maryland Avenue NE
Washington, DC  20002
Telephone:     (202) 546-8890
Facsimile:     (202) 337-3167
*Attorney for the Plaintiffs*

---

[4]See n.2 supra.